GEORGE FRED WILLIAMS *vs.* CARL F. MONK & another.

Suffolk.    January 24, 1901. — May 22, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Contract*, Construction.

In an agreement to convey "a good title" to certain land "free and clear from all mortgage encumbrances, taxes and mechanics liens" the word "taxes" includes a sewer assessment.

CONTRACT on a promissory note made by Carl F. Monk and Agnes C. Monk for $370 with interest thereon.  Writ dated September 25, 1899.

At the trial in the Superior Court, before *Bond*, J., the plaintiff introduced evidence tending to show that the defendants signed the note, and that it was given for money lent by the plaintiff to the defendants, and introduced the note in evidence.

It appeared in evidence that the plaintiff held the legal title to the property at the corner of Chapman Avenue and Carlos Street in Dorchester described in the following agreement between the plaintiff and the defendant Carl F. Monk dated February 3, 1899, and extended as shown below:

"Agreement made this third day of February, 1899, between George Fred Williams, of Dedham, County of Norfolk, and Commonwealth of Massachusetts, of the first part, and Carl F. Monk, of Boston, County of Suffolk, and Commonwealth aforesaid, of the second part.

"The party of the first part hereby agrees to sell, and the party of the second part to purchase, a certain estate situated on corner of Chapman Avenue and Carlos Street, Dorchester, Mass., consisting of a twelve-room frame dwelling house and stable, and thirteen thousand five hundred square feet of land more or less.

"Said premises are to be conveyed within fifteen days from this date by a quitclaim deed from the party of the first part, conveying a good title to same, free and clear from all mortgage encumbrances, taxes and mechanics liens.

" And for such deed and conveyance the party of the second part is to convey, or cause to be conveyed, to the party of the first part, four lots of land situated on Cottage Terrace, Roxbury, Mass., and numbered as follows: No. 35, 36, 37, 38, on plan drawn by W. O. Woods, and recorded with Suffolk Deeds, and containing about ten thousand feet of land and forty-three hundred dollars in cash. Said lots are to be conveyed within fifteen days from this date by the said Williams by quitclaim deed, and said Monk by a good and sufficient warranty deed conveying a good and clear title to same free and clear from all encumbrances. George Fred Williams." [SEAL.]

" The performance of above agreement is hereby extended until the 25th day of February, 1899, with the understanding that the above said Monk is to pay to said Williams five per cent on the amount of $9,000 from time of this extension. Carl F. Monk, George Fred Williams."

" The performance of within agreement is hereby extended until March first, 1899. Carl F. Monk."

" The time for the performance of the within agreement is hereby extended until 2 o'clock, Wednesday, March 8, 1899. Carl F. Monk, George Fred Williams. March 4, 1899."

After putting in the foregoing evidence the plaintiff rested his case. Whereupon the defendants offered to prove that at the time of the passing of the papers in conformity with the agreement, on March 8, 1899, at the Registry of Deeds in Boston, it appeared there was a sewer assessment of $370 upon the plaintiff's property; that at that time the plaintiff said that under his agreement the sewer assessment did not belong to him to pay; that the defendant Carl F. Monk said to the plaintiff that it did belong to him to pay; that Monk was prepared to pay to the plaintiff only the sum of $4,300, called for by the agreement; that the sewer assessment amounted to about $370, and was a valid assessment for the construction of a common sewer in the street upon which the property of the plaintiff was situated; that it was a lien upon the property to be conveyed by the plaintiff, and that it was existing at the time the agreement was entered into by the plaintiff and Carl F. Monk; that after some talk the plaintiff suggested that he would leave the sum of $370 with one Fisher, to pay for the

sewer assessment, and suggested to the defendant Carl F. Monk that he give a note for the sum of $370, signed by himself and wife, and that if it belonged to him, the plaintiff, to pay under the agreement, after investigation, he would return the note to the defendant; that if upon investigation it belonged to the defendant to pay under the agreement, then the note should be paid; that thereupon Carl F. Monk's wife, the other defendant in this action to whom the property was to be conveyed by the plaintiff, was called over from the place where she was then sitting, and was informed in the presence of the plaintiff of the facts. A note for $370 was signed and delivered to the plaintiff, for which was substituted on the same day, under the same conditions and agreements, another note of the same purport, which is the note in suit.

Thereupon Agnes C. Monk received a conveyance of the property, the sum of $3,930 was paid in cash to the plaintiff and the sum of $370, retained out of the purchase money to pay the sewer assessment, was paid into the hands of Fisher by Monk, and Fisher paid the sewer assessment with it. The property to be conveyed to the plaintiff by the terms of the agreement was conveyed, all in pursuance of the talk and agreement at the Registry of Deeds.

At the close of this offer of proof, the judge ruled that the plaintiff, by the terms of the written agreement, had not covenanted to convey his property free and clear from the sewer assessment. The defendants asked the judge to rule that by the terms of the written agreement the plaintiff was bound to convey the property free and clear from the sewer assessment, which the judge refused to do. To the foregoing ruling and refusal to rule the defendants alleged exceptions.

The judge ordered a verdict for the plaintiff for the amount of the note and interest; and the defendants alleged exceptions.

*C. F. Eldredge*, for the defendants.

*J. A. Halloran*, for the plaintiff.

HOLMES, C. J. This is an action upon a promissory note for a part of the purchase money for land conveyed by the plaintiff to the first named defendant. At the time of the conveyance there was a dispute as to which party should pay an outstanding

sewer assessment which was a lien upon the premises. This defendant paid it with money retained out of the purchase money for that purpose, and made the note which was to be paid or returned according to the true construction of the agreement for the sale of the land. That is the only question before us.

Williams's land was to be conveyed by a "quitclaim deed . . . conveying a good title to same, free and clear from all mortgage encumbrances, taxes and mechanics liens," and the question may be narrowed to whether the word "taxes" as here used includes an assessment for a sewer. There is no doubt that the word may be used in such a way as either to include or to exclude it. In *Smith* v. *Abington Savings Bank*, 165 Mass. 285, an exception of "the taxes assessed for the year 1893" from a covenant against encumbrances, in a deed, was held to refer only to the ordinary annual taxes and not to embrace such a lien. But the nature of the instrument and other considerations may give the word a wider meaning. *Harvard College* v. *Aldermen of Boston*, 104 Mass. 470, 483. *Codman* v. *Johnson*, 104 Mass. 491, 492.

The same general considerations that were in favor of treating the lien as not excepted from the covenant against encumbrances in *Smith* v. *Abington Savings Bank* are in favor of treating it here as included among the encumbances from which Williams's land was to be free. In general, when a man buys land he means to buy it free of encumbrances except so far as he expressly agrees to assume them. In this case the deed was to convey "a good title." And although it may be argued that these words, so far as they refer to possible encumbrances, are interpreted by the specific enumeration which follows, that argument does not quite destroy the indication to be drawn from them that the defendant meant to get an unencumbered title to the land. Again, in *Smith* v. *Abington Savings Bank* the very form of the expression pointed to annually recurring rather than to exceptional taxes, whereas here the connection would lead to reading "taxes" as meaning all taxes which give rise to liens.

The defendant also conveyed certain lots of land to the plaintiff, and the words of the contract with regard to them are "Said lots are to be conveyed within fifteen days from this date by the said Williams by quitclaim deed, and said Monk by a good and

sufficient warranty deed conveying a good and clear title to same free and clear from all encumbrances." The last six words might be read as referring to the deeds on both sides, and thus as strengthening the construction which we adopt. But as what Williams was to do had been described earlier in the instrument, we hardly should rely upon this later passage to enlarge the meaning of that which went before. In our opinion the sewer assessment was a tax within the meaning of the contract.

*Exceptions sustained.*