UNITED BRICK & TILE COMPANY, a Corporation, v. EMMA AULT, Executrix of the Estate of A. F. AULT, Appellant.—123 S. W. (2d) 39.

Division Two, December 20, 1938.

*Watson, Ess, Groner, Barnett & Whittaker* for appellant.

726

*Flavel Robertson* and *Arthur N. Adams* for respondent.

WESTHUES, C.—This case comes to the writer on reassignment. It is an appeal from a judgment entered against appellant and in favor of respondent, United Brick & Tile Company, in the sum of $8,997.50. Plaintiff's cause of action was based on a contract for the sale of real estate situated in the State of Oklahoma and a deed made pursuant to that contract. The contract was entered into between the United Clay Products Corporation, as the buyer, and A. F. Ault, K. T. Hagler and W. R. Ritchie, as the sellers. These

latter three were made defendants, but no service of process was had upon Hagler and Ritchie. The case was dismissed as to them. A. F. Ault died pending the appeal and the cause was revived against Emma Ault, the executrix of the estate. The respondent, United Brick & Tile Company, a corporation, acquired all the rights of the United Clay Products Corporation.

The United Brick & Tile Company, respondent, will be referred to herein as the plaintiff. It was alleged that plaintiff purchased property from Ault, Hagler and Ritchie for which it paid $425,000. It was later discovered that there was an unpaid special assessment for street improvements against the property in the sum of $6,300 and interest thereon. The deed executed by the sellers was a general warranty deed, and would have been, except for a statute of Oklahoma, sufficient to hold the defendant liable for the unpaid tax assessment. The statute of the State of Oklahoma, section 4609, statute of 1921, Chapter 29, Article 12, provides that unmatured installments of special assessments shall not be deemed to be within the terms of any general covenant or warranty. The assessment in this case was to have been paid in ten annual installments. Defendant had paid one of such installments and the others were not due at the time the deed was delivered. Appellant contends that the law of Oklahoma must govern in this case. This was pleaded in the answer. Plaintiff contends that the contract and deed were executed in Missouri and therefore the Missouri law must control the situation. Plaintiff also contends that even under the law of Oklahoma defendant was bound to pay the special tax. The trial court took this view of the case and in a well considered and learned opinion held that plaintiff was, under its contract and deed, entitled to recover the amount of the lien existing against the property at the time the deed was delivered to it. The contract of sale contained the following provision:

"And it is understood and agreed that the deeds, bills of sale and other instruments necessary or desired to vest full and complete title in the party of the second part shall be executed and delivered to said second party at the office of the Tulsa Vitrified Brick & Tile Company, at Tulsa, Oklahoma, on January 15, 1926, and that payment therefor as above outlined shall be made at the same time and place by bank draft or certified check, and that time is of the essence hereof. . . .

"It is further mutually understood and agreed that all taxes which are liens on the property shall have been paid at the date of the conveyance by said first parties, and, further, that all policies of insurance covering said property or any thereof shall be proportional

so that the purchasers shall pay the portion of said policy premiums that are unearned at said time.

"It is further agreed that abstracts indicating the state of the title to said properties shall be prepared by said first parties and furnished to said second party or its representatives on or before the 15th day of December, 1925." It may be noted here that the abstract furnished by the sellers did not make any mention of the unpaid assessment against the property. The deed delivered to the plaintiff contained the following clause:

"TO HAVE AND TO HOLD, said described premises unto the said party of the second part,———heirs and assigns forever, free, clear and discharged of and from all former grants, taxes, judgments, mortgages and other liens and incumbrances of whatsoever nature."

We are of the opinion that the trial court correctly held that under the laws of the State of Oklahoma the defendant was liable for the unpaid special assessment. The cases of that state hold that a general covenant in a warranty deed does not cover unmatured special assessments because of the statutory provision above mentioned. [See Knight v. Clinkscales, 51 Okla. 508, 152 Pac. 133.] But the Supreme Court of that state has also held that the parties to a contract of sale may agree that the seller shall pay such assessments, and when such an agreement is made the purchaser may recover the amount of the assessments that existed against the land. [Blythe v. Campbell, 242 Pac. 770, 115 Okla. 227; Patchell v. Garvin, 66 Okla. 184, 168 Pac. 423.] The statute of the State of Oklahoma provides that all special assessments against property shall be a lien against the lots and tracts of land so assessed from the date of the ordinance levying the same, co-equal with the lien or other taxes, and prior and superior to all other liens against such lots or tracks. In its finding of facts the trial court found that:

"The representative of the buyer, for the purpose of ascertaining whether or not there were any incumbrances or liens against the property, asked either the sellers or their representatives the direct question as to whether or not there were any taxes, general or special, against the property, or any other liens, and this was done prior to paying the purchase price designated in the contract, of $425,000, to the sellers, upon their delivering to the buyer their deed to the property. After these questions had been asked by the representative of the buyer, and had been answered that there were no liens upon the property, the buyer paid, in cash, to the sellers, the amount agreed upon, and the sellers there and then delivered a warranty deed to the property, to the buyer."

■ The trial court's opinion, disposing of the legal question involved, contains the following:

" 'The Court concludes that even though the Statute of Oklahoma provides that unmatured assessments shall not be deemed to be within a general covenant or warranty, that the law does not prohibit the seller and buyer of property from agreeing to pay special assessments that are liens against the property, even though they are unmatured.

" 'The Court finds that the contract which described the kind of deed that was to be furnished the buyer, provided that said deed "shall vest a full and complete title in the grantee;" that a "full and complete title" is one that is not burdened with any kind of a lien.

" 'In the case of Burton's Heirs v. Carroll et al., 96 Tex. 320 (Supreme Court of Texas, March 5, 1903), 72 S. W. l. c. 582, the court defines what is a "full title," in the following language:

■ " ' "The decisions have added little, if anything, to the forcible language of the article itself, for it clearly and distinctly provides that 'the person having such peaceable and adverse possession shall be held to have full title, precluding all claims.' Full title embraces legal and equitable title to the property, and comprehends that which passed from the government by patent; consequently, if limitation confers full title upon the possessor, then it must divest title out of all other claimants, and vest the same in the possessor under the claim of limitation."

" 'The Court further finds that the contracting parties had a right to define what kind of a title the deed would vest in the grantee, and having defined that said deed should be such as to invest the grantee with full and complete title, the vendors are bound by their contract.

" 'In the case of Williams v. Monk, 179 Mass. l. c. 25, 60 N. E. 394, the Court said:

" ' "Williams' land was to be conveyed by a 'quit-claim deed . . . conveying a good title to same, free and clear from all mortgage encumbrances, taxes and mechanics' liens,' and the question may be narrowed to whether the word 'taxes' as here used includes an assessment for a sewer. There is no doubt that the word may be used in such a way as either to include or to exclude it. In Smith v. Abington Savings ·Bank, 165 Mass. 285, an exception of 'the taxes assessed for the year 1893' from a covenant against encumbrances, in a deed, was held to refer only to the ordinary annual taxes and not to embrace such a lien. But the nature of the instrument and other considerations may give the word a wider meaning. [Har-

vard College v. Alderman of Boston, 104 Mass. 470, 483; Codman v. Johnson, 104 Mass. 491, 492.]

" ' "The same general considerations that were in favor of treating the lien as not excepted from the covenant against encumbrances in Smith v. Abington Savings Bank are in favor of treating it here as included among the encumbrances from which Williams' land was to be free. In general, when a man buys land he means to buy it free of encumbrances, except so far as he expressly agrees to assume them. In this case the deed was to convey 'a good title.' And although it may be argued that these words, so far as they refer to possible encumbrances, are interpreted by the specific enumeration which follows, that argument does not quite destroy the indication to be drawn from them that the defendant meant to get an unencumbered title to the land."

" ' 'This was a quit-claim deed, in which there were no general covenants or warranties, and if the sewer tax was to be included, it was because the parties had agreed to convey a good title to the same, free and clear of all mortgages, encumbrances, taxes and mechanics' liens. Here the word "taxes" was held to include special assessments, because of the surrounding circumstances that existed at the time the contract was entered into, and because the grantor agreed to convey a good title, free of encumbrances.

" ' 'The statute of Oklahoma refers to "unmatured paving assessments," and states:

" ' ' "Such special assessments, and each installment thereof and the interest thereon are hereby declared to be a lien . . . co-equal with the lien of *other taxes*," thus designating unmatured installments as taxes and liens, which are encumbrances.

" ' 'In the case of Clark v. Asbury, 134 S. W. 286, l. c. 288, the court, in construing the words "good and satisfactory deed," held that the parties were bound by this designation of the deed, and that even though the seller had a full title by adverse possession, the buyer had a right to reject the sale as not satisfactory, the Court saying:

" ' ' "We do not think that under the term 'satisfactory' it would be necessary to comply with any unreasonable whims of the proposed purchaser with reference to the title; but the fact that the title tendered him might seriously interfere with his selling the land or borrowing money thereon, might reasonably render such a deed unsatisfactory." [Berthold v. Electric Co., 165 Mo. 280, 65 S. W. 792, and other authorities.] ' "

We are of the opinion that the trial court's ruling on the question is correct.

█ Appellant argues that the evidence concerning what was said by the parties at the time the deed was delivered and the money

paid, was erroneously admitted. The trial court gave declarations of law, at appellant's request, which read:

"The court declares the law to be that under the pleadings in this case evidence tending to alter, vary or contradict the terms of said written contract and said warranty deed is inadmissible. . . .

"The court finds that said vendors did not enter into any agreement with said vendee or the assignee of said vendee respecting the sale of the lands described in said written contract and in said warranty deed other than the agreements contained in said written contract and warranty deed."

The trial court decided the point in appellant's favor and therefore he is in no position to complain.

Appellant also urged that the trial court erred in admitting the written contract in evidence and in giving consideration to the contract in determining the case. Appellant cannot complain of this ruling of the trial court because in the answer we find the following admission:

"Said defendant admits that pursuant to said contract this defendant, together with the other defendants herein named, made and executed to the plaintiff herein their warranty deed and that plaintiff's Exhibit '2' is a true and correct copy of the same, and that the land described in said deed and in said petition (said land being the same land as that described in the contract hereinabove referred to) is located in Tulsa County, Oklahoma."

Defendant in the answer also pleaded the law of the State of Oklahoma, asserting that under the law of that state defendant was not liable under the contract and deed for the unmatured assessment against the property. Defendant's attorney, who drew the contract, testified that in his opinion under the law of Oklahoma defendant was not liable under the contract and deed. The defendant also requested the court to give declarations of law and make findings of facts on the theory that the sellers were not liable under the contract and deed for the unpaid assessment. After the defendant found that the court was not in accord with him on the construction of the contract, he then asked the court to find that the contract had merged in the deed. This the trial court refused, and we think it was correct. Defendant, by his answer and requested declarations of law and findings of facts, some of which were given, joined issue with the plaintiff on the question of liability under the contract and deed. That being the case appellant is in no position to complain. The judgment of the trial court was manifestly for the right party and it should be affirmed. It is so ordered. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES C., is adopted as the opinion of the court. All the judges concur.