CLYDE ADAMS and FRANCES ADAMS, Appellants, v. CLAUDE V. SMITH and DORA SMITH, Respondents, No: 41722—232 S. W. (2d) 482.

Division One, September 11, 1950.

*L. S. Dewey* and *Robert Stemmons* for appellants.

1084

*Watson, Richart & Titus* for respondents.

 LOZIER, C.—This is a suit to determine title to Lot 125, Albert Frye's Add. to the City of Joplin, with a house thereon. The original defendant, Bessie Allen Holman, filed answer. On their own motion, respondents Claude V. Smith and Dora Smith, his wife (hereinafter called defendants), were substituted as defendants and answered. Appellants (hereinafter called plaintiffs) appealed from a judgment for defendants; determining that defendants were vested with fee simple title, and that plaintiffs had "no right, claim or interest in the estate or title whatsoever * * * or any lien thereon"; dismissing plaintiffs' petition; and giving defendants judgment for $320 on their counterclaim.

The lot was conveyed to John P. Lange and wife, Shilah, by the entirety in 1921. John Lange died in 1936. On Nov. 1, 1943, the lot was sold for 1938, 1941 and 1942 taxes ($18.05) but the consequent collector's deed (consideration, $18.05) to Arthur L. Miller (assignee of the purchaser's certificate of purchase) was not executed until Jan. 22, 1946. On Feb. 12, 1946, Miller quitclaimed (recited consideration, $1.00) to Mrs. Holman who, on Nov. 12, 1946, quitclaimed to defendants for $79.

Plaintiffs claim as purchasers for $450 at a sheriff's sale (in special execution of a $109.55 judgment rendered Feb. 5, 1944, against Shilah Lange, George Lange and Myrtle Lange, his wife) on Oct. 14, 1944, and consequent sheriff's deed dated the same day. On Nov. 2, 1944, defendants entered into a contract with plaintiffs, through their agent, McIntosh, to purchase the lot for $850, payable in installments, by warranty deed to be delivered upon completion of the payments. (This contract, apparently unacknowledged by any of the signers, was recorded Sept. 25, 1945.) The record does not show whether the abstract of title was ever delivered to defendants or, if it was not, whether they ever demanded it. Plaintiffs' evidence was that they

"were ready to furnish it at any time." At the trial plaintiffs offered a warranty deed to the property upon payment by defendants "of such sums as the court may find to be due under the contract of sale and offer to get up an abstract of title to the premises at their own expense." About Jan. 1, 1945, defendants took possession, thereafter expended about $1000 improving the house and made total payments of $320 under the contract. Other pertinent facts are hereinafter referred to.

Plaintiffs raise two issues here: the right of defendants (as purchasers in possession under an executory contract to purchase) to acquire an outstanding interest adverse to plaintiffs' title, and the validity of the tax sale proceedings resulting in the collector's deed to Miller. Defendants suggest (but do not assert) that plaintiffs were "nonexistent persons"; suggest (but do not assert) the invalidity of the contract of purchase; and contend that they "were justified in purchasing the outstanding title and asserting it against" plaintiffs.

An interesting phase is that both parties proved all of the *material allegations of fact* contained in their respective pleadings, viz.: plaintiffs' title; defendants' title; negotiation of the contract with plaintiffs' agent, McIntosh; execution of the contract; taking of possession thereunder; payment of $320 on the purchase price; defendants' expenditures for improvements; Mrs. Holman's assertion of ownership (the evidence was that she did not demand possession or threaten ejectment, as defendants alleged); oral notice to McIntosh of Mrs. Holman's claim; defendants' and their attorney's inquiries of McIntosh as to plaintiffs' address and their inability to secure such information from him (there was evidence that defendants and their attorney did not endeavor to locate plaintiffs in any other way than through McIntosh); letter of April 12, 1946, from the attorney to plaintiffs and McIntosh advising them of the Holman claim and demanding that defendants be protected against same under the contract; and payment by defendants of a $150 attorney's fee for advice as to the Holman claim, for trying to locate plaintiffs through McIntosh, for writing the letter and for representing defendants in this case.

Plaintiffs proved all of the factual allegations of their petition. There was no evidence to support these immaterial allegations of Mrs. Holman's answer, which defendants adopted: that she was the purchaser at the 1943 tax sale (she was the grantee of the collector's grantee who was the assignee of the purchaser); that she paid all taxes due (Miller, the grantee in the collector's deed apparently paid $18.05) and to become due, and that plaintiffs did not pay any other taxes, but permitted them to become delinquent, and that she (Mrs. Holman) had to pay same in order to protect her interest (the record is silent as to who paid the 1944 taxes, plaintiffs' ob-

ligation under the contract, or those for 1945 and thereafter, defendants' obligation under the contract).

Defendants failed to prove these immaterial allegations of their answer: that defendants did not personally sign the contract of purchase "purported to have been signed by" them; and that Mrs. Holman demanded possession and threatened ejectment. Defendants alleged that, because of plaintiffs' failure to protect defendants' interest, they were "unable to complete the improvements already commenced," and that by reason of that fact, together with having to employ an attorney, they were damaged $500. It was not disputed that defendants paid the $150 attorney's fee. Defendants testified that the Holman claim prevented them from making further improvements, and the defendant husband stated that they had been damaged because "since he started to do the work, labor and materials prices had practically doubled."

■ We stated that these allegations of defendants' answer were immaterial. Defendants could not challenge the validity of plaintiffs' signatures on the contract of purchase. They pleaded the contract both in their motion (to be substituted as defendants) and in their answer. They admitted signing the contract, being put in possession under it and making payments of installments due under it. They admitted notifying plaintiffs' agent of the Holman claim. They had their attorney write a letter, addressed to plaintiffs and their agent, calling upon plaintiffs to protect them "under the contract." So far as the record shows, at no time prior to trial itself did defendants intimate that the contract document was not in fact signed by plaintiffs. There was no substantial evidence that it was not. Even in this court defendants do not contend otherwise. Such a contention would be wholly without merit as defendants would have been estopped to deny the validity of their contract to purchase.

■ The attorney's fee was shown to have been reasonable. But the record shows that the work of defendants' attorney was primarily in assisting them in their effort to locate plaintiffs, and in notifying plaintiffs that defendants intended to hold them liable for any loss resulting from the Holman claim, in advising defendants to purchase the Holman claim and in representing defendants in this lawsuit, viz., in asserting a claim of title adverse to plaintiffs. Here defendants were attacking plaintiffs' title and on this issue were in the position of a plaintiff. Horton v. Gentry, 357 Mo. 694, 210 S. W. 2d 72. Defendants are no more entitled to reimbursement for attorney fees than they would be if they had rescinded the contract, yielded possession, sued plaintiffs for breach of contract and claimed, as part of their damages in such action, reimbursement for attorney's fees for trying the case.

■ Defendants claim that damages (presumably $350) resulted from their inability to go ahead with the improvements. Such dam-

ages were not only not shown by any substantial evidence, but were obviously most remote and highly speculative. "If the damages are so remote as not to be traceable to the wrongful act, or are the result of intervening causes, then they cannot be allowed." Dick v. Puritan Pharmaceutical Co., (Mo. App.) 46 S. W. 2d 941.

One other minor point should be disposed of here. Though they had not pleaded that plaintiffs were nonexistent persons, defendants offered evidence, purely negative in character, that plaintiffs *might* be "straw parties" and that McIntosh *might* be the real party in interest. While plaintiffs did not appear personally at the trial, they filed and tried, and perfected their appeal in, the case by attorneys. There was positive direct evidence, uncontradicted, that plaintiffs were existent persons and were actually vested with title when the contract of sale to defendants was executed. In this appeal, defendants only intimate, not assert, that they *may not* have been.

Plaintiffs contend that the collector's deed was voidable in that the widow ▮▮▮ of John Lange was the owner when the taxes were assessed in the name of her deceased husband, and that she "was not a party to the tax proceedings." Land is "chargeable with its own taxes, no matter who is the owner, nor in whose name it is or was assessed." Sec. 10984. (Unless otherwise noted, all references to statutes herein are to both Mo. R. S. 1939 and Mo. R. S. A.) Since the enactment of the Jones-Munger. law (Secs. 11108 ff.) in 1933, sales of land for delinquent taxes have been by administrative proceedings. Kennen v. McFarling, 350 Mo. 180, 165 S. W. 2d 681. See also Bussen Realty Co. v. Benson, 349 Mo. 58, 159 S. W. 2d 813. Land is now (and was at the time of the tax sale involved here) subject to sale by the collector after publication of a notice which need not include the name of the owner, a description of the land being sufficient. Secs. 11125 and 11126. The cases cited by plaintiffs are inapplicable as they involve delinquent tax sale proceedings prior to the Jones-Munger law. See Horton v. Gentry, supra, and Gee v. Bullock, 349 Mo. 1154, 164 S. W. 2d 281.

However, for the other reason assigned by them, plaintiffs were entitled to have the collector's deed set aside. The property was sold for $18.05 at the tax sale. The uncontradicted evidence was that on that date it was worth approximately $600. We deem the consideration so shockingly inadequate as to require cancellation of this deed as requested by plaintiffs. Liese v. Sackbauer (Mo. Sup.), 222 S. W. 2d 84; and Bussen Realty Co. v. Benson, supra. See also Davis v. Johnson (Mo. Sup.), 208 S. W. 2d 266; Johnson v. McAboy, 350 Mo. 1086, 169 S. W. 2d 932; Kennen v. McFarling, supra; Mahurin v. Tucker (Mo. Sup.), 161 S. W. 2d 423; and Ellis v. Powell (Mo. Sup.), 117 S. W. 2d 225. We rule that defendants, as successors

in title to the purchaser at the tax sale, acquired no interest which they could hold as against plaintiffs.

■ (On the other hand, we do not feel that the consideration for the sheriff's deed to plaintiffs was shockingly inadequate. At the sale, in execution of a $109.55 judgment, plaintiffs paid $450. This was only $150 less than its approximate value in Nov. 1943. It was more than half what defendants agreed to pay plaintiffs for the property on Nov. 2, 1944, three weeks after plaintiffs bought it at the execution sale. We rule this point against defendants.)

■ Defendants concede that the general rule is that a purchaser in possession under an executory contract to purchase cannot assert against the seller an interest, acquired from a third party, adverse to the seller. They contend, however, that there are exceptions to this general rule, and that the facts here justify defendants in purchasing the outstanding title of Mrs. Holman and asserting it against plaintiffs.

Defendants' position can be best stated as they stated it in their brief:

"We call attention to the fact that from March, 1946, down to November 12, 1946, the date when respondents acquired by quitclaim deed the title of Bessie Allen Holman, respondents were unable to locate Clyde Adams or Frances Adams; that by their letter dated April 12, 1946, they had offered to fully perform their contract with Clyde Adams and Frances Adams; that respondents, relying upon that contract, had made improvements upon the premises in question to the extent of approximately One Thousand Dollars ($1,000.00); that the contract entered into provided that parties of the first part should furnish to second parties an abstract of title to the premises in question, 'showing title good and sufficient in grantors' and that the last paragraph of said contract provided, 'and it is hereby further agreed that no default or contingency that may hereafter occur shall release either party from all or any of the obligations of this agreement, except only the existence of substantial defects in the title to any or all of the real estate above described, as cannot be made good within 30 days from the date of this contract.'

"Respondents first learned of the claim of the outstanding title in Bessie Allen Holman in March, 1946, made every effort to locate the parties with whom they thought they had entered into a contract, retained the services of an attorney who likewise attempted to locate Clyde Adams and Frances Adams, and failing to do so were fully justified in becoming suspicious as to the existence or interest of Clyde Adams and Frances ■ Adams in the property which they had contracted to purchase, were justified in becoming apprehensive as to whether they could be protected not only in the purchase price which they had paid but as to the One Thousand Dollar improvements which they had made upon the premises, were unable to return pos-

session to the parties with whom they thought they had entered into the contract, except possibly a return of possession to J. A. McIntosh who had failed to produce his principals, and of whom they were likewise justified in being apprehensive of securing any protection for their investment, and for these reasons, we believe it fully justified respondents in finally taking the matter into their own hands after waiting some eight months and purchasing the outstanding title of Bessie Allen Holman which, in fact, was the legal title to the property in question, the only outstanding interest being the right of the original owners or their assigns to redeem, and, after the issuance of the collector's deed, the right of those parties to question the validity of the tax sale for fraud.''

Defendants have not stated facts which bring them within any recognized exception to the well-established principle. A purchaser in possession under an executory contract may not purchase an outstanding title (including a tax title) and assert it against his vendor. Unless he surrenders possession, his right is limited to offset against the purchase money his costs expended in acquiring such outstanding interest. Slocum v. Peterson, 131 Wash. 61, 229 p. 20, 40 A. L. R. 1071; Anno. 40 A. L. R. 1078; Smith v. Busby, 15 Mo. 388, 57 Am. Dec. 207; Harvey v. Morris, 63 Mo. 475; and Ragsdale v. Phelps, 90 Mo. 346, 2 S. W. 300. See also Galloway v. Finley and Barr, 12 Pet. (U. S.) 264, 9 L. Ed. 1079; Bush v. Marshall, 6 How. (U. S.) 284, 12 L. Ed. 440; Annos. 101 A. L. R. 526 and 34 A. L. R. 1321. The purchaser in possession cannot dispute his vendor's title or fail to pay the purchase money (Wright v. Lewis, 323 Mo. 404, 19 S. W. 2d 287), even where he is entitled to rescind the contract (McFarland v. Cobb (Mo. Sup.), 64 S. W. 2d 931).

Had defendants' tax title been valid, they could not have asserted it against plaintiffs. Defendants did not seek to rescind or surrender the contract. By their pleadings and proof they stood upon the contract. They neither yielded nor offered to yield possession. See Gash v. Mansfield (Mo. App.), 28 S. W. 2d 127; and McFarland v. Cobb, supra.

█ The judgment below did not expressly decree a rescission of the contract, but it did decree a return of the installments paid. Such a decree is proper only upon the theory that the contract was disaffirmed by respondents. See Rice v. Griffith, 349 Mo. 373, 161 S. W. 2d 220. Yet the effect of the judgment is: to void a contract which the parties considered binding, and under which defendants obtained possession (and under which they were in possession over a year before Mrs. Holman made her claim, and under which they are still in possession); to require plaintiffs to reimburse defendants all payments made under that contract; and to relieve defendants from the obligation of making the balance of the payments provided for in that contract.

Defendants here had and still have an equitable interest in the property. Hamilton v. Linn, 355 Mo. 1178, 200 S. W. 2d 69; State ex rel. City of St. Louis v. Baumann, 348 Mo. 164, 153 S. W. 2d 31; and Waugh v. Williams, 342 Mo. 903, 119 S. W. 2d 223. And they are entitled to offset against the purchase price what they expended in acquiring the Holman claim. See United Brick & Tile Co. v. Ault, 343 Mo. 724, 123 S. W. 2d 39.

The costs of the case should be borne by defendants. Defendants are still liable for the balance of the installment payments. But they may offset against these the $79 they expended in acquiring the Holman claim with 6% interest from Nov. 12, 1946. And plaintiffs' failure to exercise their redemption rights (by payment of the back taxes, $18.05) within the prescribed time and, thereafter, to try to acquire the Holman claim (which, apparently, they could have done, as did defendants, by the payment of $79) impels the conclusion that, in equity and good conscience, plaintiffs are not entitled to interest upon the installments now delinquent.

The judgment is reversed and the cause is remanded with directions to enter a decree cancelling the collector's deed, adjudging plaintiffs to be owners of the lot in fee simple, subject to defendants' equitable lien, and otherwise in conformity herewith. *Van Osdol* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. All the judges concur except *Hollingsworth, J.,* not voting because not a member of the court when the cause was submitted.