William CREECH, Respondent,

v.

RISS & COMPANY, Inc., Otto Boss, Jr., a Minor, by Gerard M. Dorsey, Guardian ad litem, and Elmer Boss, Appellants.

No. 44880.

Supreme Court of Missouri.

Division No. 1.

Dec. 12, 1955.

Motions for Rehearing or to Transfer to Court en Banc Denied Jan. 9, 1956.

Harlan & Harlan, Clayton, and Watts & Gentry, St. Louis, for appellant, Riss & Co., Inc.

Rene J. Lusser, St. Louis, for appellants, Otto Boss, Jr., and Elmer Boss.

F. X. Cleary, C. M. Kirkham, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for respondent.

COIL, Commissioner.

About 9 o'clock on the dark, clear night of January 5, 1954, at a place on U. S. Highway 66 just east of the point at which U. S. Highway 50 enters and joins it from the west, a collision occurred between a tractor-trailer owned by appellant Riss & Company, Inc., and a stock truck owned by appellant Elmer Boss and operated by appellant Otto Boss. As a result of that collision, the northbound traffic lanes on 66 were blocked and respondent, operating a northbound tractor-trailer, collided with one or both of the trucks involved in the prior collision. We shall hereinafter refer

to the parties as they were designated in the trial court.

A jury awarded plaintiff $17,500 for personal injuries and defendants now contend that they should have had judgment because plaintiff was contributorily negligent as a matter of law. Defendants Boss also contend: that the evidence failed to show their negligence or proximate negligence; that the trial court erroneously permitted plaintiff to amend his petition during the trial and erroneously admitted evidence pertaining to the subject of the amendment; and that instructions 3 and 4 are reversibly erroneous.

In determining whether plaintiff was contributorily negligent as a matter of law, we are mindful of the fact that plaintiff's negligence was a jury question unless it may be said from all the evidence and the reasonable inferences therefrom, viewed in the light most favorable to plaintiff, that the only reasonable conclusion was that plaintiff was proximately negligent. Johnson v. Lee Way Motor Freight, Inc., Mo. Sup., 261 S.W.2d 95, 96 [1].

Viewing the evidence in the light of the foregoing, the jury reasonably could have found the facts to be as herein stated. Highway 50, at the place where it joins 66, runs east and west, and Highway 66 northeast-southwest. One traveling east on 50 enters 66 at an angle of about 40 degrees. Highway 66 is divided with two lanes, each 12 feet wide, for southbound, and two like lanes for northbound traffic, separated by a 13'-wide parkway. For our purposes, we shall consider that Highway 50 ran east and west and 66 ran north and south.

Defendant Otto Boss, traveling east on 50, stopped at a stop sign about 12 feet from the west edge of the outer southbound traffic lane of 66. The view to his right was such that he could have seen the lights of northbound vehicles for a distance of ¼th mile. He looked to his right, saw no approaching traffic, and drove forward slowly across the two southbound lanes, the parkway, and turned left into the outer (east) northbound lane of 66. He had looked to his right at various points while traversing that distance. He testified that his vision to his right decreased as he proceeded eastwardly because of the angle of the crossover but that when he was at the west edge of the inner northbound lane of 66 he could see to his right for a distance of 150 feet. The jury, however, could have found that at the times he looked to his right, the Riss tractor-trailer with its headlights burning was within his range of vision. Boss failed to see the Riss truck northbound in the shoulder lane and continued east, completing a left turn into the northbound shoulder lane.

In the meantime, the Riss operator, traveling about 35 miles per hour, applied his brakes when about 25 to 40 feet south (to the right) of the Boss truck, swerved to the right and partially onto the east shoulder. As he continued north, partially on the shoulder, he scraped one of the posts which supported a chain to prevent drivers from going down an embankment on the east side of 66, swerved back onto the highway and into the side of the Boss truck, knocking it west into the inner northbound lane. Riss turned over on its right side with its wheels facing south. The exact point of the collision was estimated to be from 6 to 55 feet north of the north edge of the crossover which Boss had used as he entered 66. After the collision there were no lights visible on either the Boss or Riss vehicles.

Highway 66, from immediately south of the 50 crossover, begins a gradual uphill curve to the left so that one traveling north on 66 descends a hill in a gradual right-hand curve until he reaches the level, straight road at the point of entry of 50. The Riss driver, when 800 feet away, had seen Boss leave his position at the stop sign and continued to watch as Boss traveled across 66 and turned left.

A drivers' safety engineer for the Coca Cola Bottling Company of St. Louis was operating a passenger car (sometimes called hereinafter the Coca Cola car) north on the inner lane of 66 some distance behind the Riss truck. As he approached the intersection, the Coca Cola driver observed the re-

spective approaches of the Boss and Riss trucks and stopped his automobile close to the crossover and watched the ensuing collision. When, during his approach, he became cognizant of a possible impending collision, he flipped a gadget on his car causing both his car's taillights to blink simultaneously.

A Ford truck had followed Boss to the stop sign at the west edge of 66. From the time Boss left the stop sign until after the second collision, the Ford truck's headlights shone directly eastwardly into the crossover and eastwardly beyond the east edge of 66. There was no permanent artificial lighting of the general accident area.

The time interval between the first and second collisions was variously estimated as from 2 to 10 seconds; one witness, however, was content to say that a "few seconds" intervened. Plaintiff, who was generally familiar with the intersection, traveling northwardly on the outer northbound lane of 66, decreased his speed to 40 m.p.h. when he reached a 40-mile speed limit sign about 1,300 feet south of the crossover. As he traveled northwardly, he did not see the Boss truck pull across or turn left on 66, nor did he notice the Riss truck prior to the second collision. His attention was directed to the blinking lights of the Coca Cola car as he speculated on what its driver intended to do and because he had been following that car, his lights were on low beam. After he passed the Coca Cola car, he flicked his lights to high beam and for the first time saw the Riss and Boss vehicles completely blocking the northbound traffic lanes. At that time, although he had decreased to less than 40 m.p.h., he could not estimate his exact speed. He immediately applied his brakes and tried to stop. He could not effectively swerve either to his left or right and was unable to stop before striking the Boss truck.

Defendants here contend that plaintiff, as a matter of law, failed to exercise the highest degree of care in the operation of his tractor-trailer in that he traveled at an excessive speed under the circumstances and failed to observe the Riss and the Boss trucks in time to have avoided a collision with them. As we see it, the issue of excessive speed is necessarily an integral part of the question as to whether plaintiff should have seen the Riss and Boss vehicles in time to have avoided running into them. This is because plaintiff's testimony was to the effect that he traveled at not in excess of the 40-m.p.h. limit which had been designated (apparently by the Highway Department) for the area, and the only circumstances shown in evidence from which it reasonably could be said that plaintiff's less-than-40-m.p.h. speed was excessive were the circumstances relating to the movements of the Boss and Riss vehicles. In other words, the same circumstances which could, as a matter of law, make plaintiff's speed excessive are the same circumstances which would have required plaintiff to have seen the vehicles and thereafter to have traveled at a speed which would permit him to stop prior to striking the Boss truck. Consequently, it would appear that the question on the issue of plaintiff's contributory negligence as a matter of law, is whether we may say that plaintiff, in the exercise of the highest degree of care, must have seen the vehicles blocking the highway in time thereafter to have stopped short of a collision with them.

Defendants stress the proposition that vehicle lights at and near the intersection involved were visible for at least 1,400 feet as one approached from the south. From that premise, they insist that plaintiff, if he had properly looked, must have seen Boss drive from the stop sign on 50 across and into the path of the Riss truck, must have seen the Riss truck and the rear lights thereon proceeding northwardly on 66 and into collision with the Boss truck, and, in any event, must have seen the two vehicles blocking the highway after the collision when plaintiff was some 600 to 800 feet from the collision point. The evidence does not compel those conclusions.

While, at the time the Boss truck moved from the stop sign located some 12 feet to the west of the west edge of 66, across the southbound lanes and the parkway and into the outer northbound lane, plaintiff's exact

position on 66 was not fixed, still there was evidence from which the jury could have found that at the time the Boss truck left the stop sign and traveled much of the distance to his left-turn point, plaintiff was not in a position to have seen Boss. There was testimony that for an appreciable time after the Boss truck had left the stop sign, plaintiff's headlights were not in the view of one seated in a truck at the stop sign. There was no direct evidence as to how far behind Riss plaintiff's truck was as they traveled north on 66, except the various estimates as to the time interval between the first and second collisions. Plaintiff was not bound by the exact limits of those time estimates, particularly in view of his testimony that he did not see the rear lights on the Riss trailer. Be that as it may, however, the fallacy of defendants' position is that the fact, standing alone, that plaintiff did not observe or remember observing the Boss or the Riss trucks prior to their collision is not necessarily of decisive importance. That is to say, unless there was something about the movements of those vehicles prior to their collision which should have put plaintiff on notice, or unless plaintiff should have seen the actual collision and the consequent blocking of the highway as a result thereof, there was nothing which, as a matter of law, should have caused plaintiff to have been cognizant of any danger to him by reason of the presence of the Boss and the Riss vehicles far ahead of him on the highway. A jury could find that plaintiff, even if he had seen those vehicles, would have believed that both of them had proceeded northwardly beyond the intersection without incident. That is to say, there was nothing about the movements of those vehicles, when plaintiff was far to the south, which we may say as a matter of law should have caused plaintiff to know that a collision between them was imminent.

■ Thus, the exact question, it seems to us, is narrowed to the proposition of whether plaintiff must, in the exercise of the highest degree of care, have observed the actual collision between, or the consequent blocking of the highway by, the Boss and Riss vehicles. It is our holding that we may not say that plaintiff's failure to have seen the first collision or the result of that collision in time to have stopped before striking Boss was, as a matter of law, the result of plaintiff's failure to exercise the highest degree of care.

In arriving at that conclusion, we recognize that a jury could have considered these facts in determining whether plaintiff was, as a matter of fact, contributorily negligent: that the collision occurred after the Boss truck had completed its turn northwardly into Highway 66; that shining directly eastwardly (not northwardly) were the headlights of the Ford truck stopped on the west side of 66, thereby, to some extent, creating a curtain of light immediately in front of the collision point; that no lights were visible on either the Riss or Boss vehicles after they collided; that the Riss tractor-trailer was on its right side with its wheels facing the direction from which plaintiff was approaching; that it was dark and no artificial lights illuminated the collision point; that plaintiff's approach to the collision scene was around a curve; that plaintiff's headlights were on low beam as he approached; that plaintiff's attention was diverted to the unusual circumstance of the simultaneously blinking taillights of the Coca Cola car proceeding north immediately in front of him; and that, inasmuch as plaintiff was not necessarily alerted to danger by the prior observable movements of the Riss and Boss vehicles, he unexpectedly encountered unlighted vehicles blocking the traffic lanes at a place where he was not bound to assume their presence. Under all the evidence, it was for the jury to say whether plaintiff, if he had properly looked, must have seen the collision or the resulting blocking of the highway in time to have stopped prior to colliding with the Boss truck.

Defendants attach decisive importance to plaintiff's testimony that he did not know how close he was to the Riss and Boss trucks at the time he first saw them blocking the highway; that he did not know how far ahead his headlights would disclose objects or disclose those objects; that he

did not know the distance, nor would he estimate it, in which he could have stopped his truck at the speed he was traveling and under the conditions there; and that he did not know his exact speed immediately prior to the collision.

While it is true that plaintiff exhibited a singular lack of knowledge of many matters which a regular tractor-trailer driver might be expected to know, yet we are unable to discern how, as a matter of law, plaintiff's lack of knowledge in those respects, under a favorable view of the evidence from plaintiff's standpoint, could have been negligence which was a proximate contributing cause of his injuries. Plaintiff testified: that he did not exceed 40 m. p. h. for approximately 1,300 feet prior to his collision; that he had decreased his speed as he approached the Coca Cola car so that at the time he passed it he was traveling less than 40 m. p. h.; that he did not know how far away the Coca Cola car was from the overturned Riss truck; that he saw vehicles blocking the highway for the first time when he turned his lights to high beam immediately after passing the Coca Cola car and that he then applied his brakes (in good condition) and did all he could to stop but could not do so in the space available.

We recognize that there was ample evidence from which the jury reasonably could have found that plaintiff did fail to exercise the highest degree of care in the operation of his tractor-trailer and that in the exercise of that care he should have observed the collision and the consequent blocking of the pavement by the vehicles involved in time to have avoided colliding with them. But we may not so say as a matter of law.

In determining the question of whether a plaintiff has been contributorily negligent as a matter of law, each case must be considered in the light of its own particular facts and circumstances. While the facts in the following cases are not like the facts of the instant case, still the results reached in them, upon facts somewhat similar, fortify us in our instant conclusion. Thompson v. Byers Transportation Co., 362

Mo. 42, 46, 239 S.W.2d 498–500; Johnson v. Lee Way Motor Freight, supra, 261 S.W. 2d 98 [3]; Roux v. Silver King Oil & Gas Co., Mo.App., 244 S.W.2d 411, 413 [3].

■ Defendants Otto and Elmer Boss contend further that there was no negligence on their part which proximately caused plaintiff's injuries. We have heretofore reviewed enough of the evidence from the standpoint favorable to plaintiff to demonstrate that there is no merit in this contention. Suffice here to add that there was evidence from which a jury reasonably could have found that from the time Otto Boss drove his truck eastwardly from the stop sign across the southbound lanes and the parkway and across the inner northbound lane into the outer northbound lane of 66, the Riss truck was within Boss's vision to his right; and that Boss drove from a place clear of the path of the Riss truck directly into its path when Riss was 25–40 feet to Boss's right. It seems apparent, therefore, that a jury reasonably could have found that the failure of defendant Otto Boss to maintain a proper lookout was negligence which proximately contributed to cause the collision between the Riss and Boss vehicles and the consequent blocking of the highway, and, thus, negligence which contributed directly to cause plaintiff's injuries.

■ Defendants Boss insist, however, that even if there was evidence from which the jury could find that Otto Boss failed to maintain a proper lookout for vehicles approaching on Highway 66, still the gross negligence of the Riss driver was an intervening, independent cause. While we are not sure that we follow that argument, suffice it to answer that if, as the jury reasonably could have found, the collision between Riss and Boss directly resulted from the combined negligence of both those drivers, then the percentage or type of the negligence of each was unimportant.

Defendants Boss further contend that the trial court erred in permitting plaintiff to amend his petition during the trial by inserting as an alleged injury: "and the structure of the left knee joint was injured

and weakened, resulting in damage to the cartilage and soft tissue of and surrounding said knee joint."

As has been noted, plaintiff was injured in January, 1954. During the trial, it was developed that on November 4, 1954, plaintiff stepped out of the pick-up truck he was then driving and his left leg "gave way," which resulted in an injury to the knee cartilage. The trial court, after carefully weighing the matter as is disclosed by the record, decided that he would permit the amendment and the evidence pertaining to the cartilage injury on the condition that plaintiff be available for an immediate examination by defendants' doctor. Defendants' doctor had theretofore examined plaintiff's left knee and leg and, by a further examination of the left knee, would have been in a position to present defendants' viewpoint both as to whether a cartilage injury did exist at the time of the trial and, if so, whether it was a direct result of the injury sustained by plaintiff in the January collision. We are not concerned, therefore, with defendant Boss's cited cases which deal with the admission over objection of evidence concerning an unpleaded physical condition. Here the physical condition was pleaded because the trial court had permitted the amendment. We are concerned only with whether the trial court abused its discretion in permitting the amendment and, if not, then whether, contrary to defendants' contention, there was substantial medical evidence adduced by plaintiff which tended to show that the cartilage injury was a result of the original accident.

In Davis v. Kansas City Public Service Co., 361 Mo. 61, 70, 233 S.W.2d 679, 683, we said: " * * * 'the question of whether an amendment to a pleading should be allowed during the course of a trial, and, if so, whether a continuance should follow if applied for, are all matters reposing largely in the sound discretion of the trial court' ". Inasmuch as it appears that the trial court as a condition precedent to permitting the amendment sufficiently protected the rights of the defendants by affording them reasonable opportunity to procure and adduce evidence to meet the allegations of the amendment, we may not hold that the trial court abused its discretion.

Defendants Boss further complain, however, that the evidence adduced after the amendment failed to show that the knee cartilage injury was directly and proximately caused by the January, 1954, accident, but, on the contrary, affirmatively showed that the cartilage injury resulted solely from the November occurrence. Plaintiff, who had spent about 50 days in a hospital, returned to work in April, 1954. He testified that on November 4, 1954, he was alighting from a pick-up truck and that as he put his left foot on a smooth concrete pavement "there was a strain on it and it just gave way on me and I went down." In the January, 1954, casualty plaintiff, among other injuries, had sustained comminuted fractures of both bones in the left leg; the site of the fracture of the small bone was at the middle of the leg and the fracture of the large bone extended into the ankle joint. Plaintiff also sustained an injury to his left foot whereby the sole of the foot was torn loose from the fascia which held it to the bones. From January until November plaintiff had intermittent pain in his left leg and foot as a result of the normal use thereof, which pain was so intense on the occasion in November as to cause, without fault on his part, his left leg to collapse. One of the doctors testified, in effect, that it was his opinion, based on reasonable medical certainty, that plaintiff's fall in which he sustained the knee cartilage injury which occurred in November was the result of pain and weakness in the foot and leg which, in turn, had resulted from the January accident, although that doctor made clear that the knee cartilage had not been injured in the January accident but was a new injury present only after plaintiff's November fall.

Defendants Boss contend, in effect, that damages were not recoverable for the cartilage injury because it appeared, as a matter of law, that the resulting damages were so remote as not to be traceable to the occurrence brought about by defendants' neg-

ligence in January, 1954, but, on the contrary, any damages sustained by reason of injury to the knee cartilage resulted from a separate, intervening, and efficient cause, viz., plaintiff's fall in November, 1954.

■■ There is general unanimity in the statement of the broad general rule that a tort feasor is liable to an injured person in compensatory damages for all natural or proximate consequences of his wrongful act or omission. 25 C.J.S., Damages, § 18, p. 472. And it is said that damages resulting from intervening causes are not recoverable. Adams v. Smith, 360 Mo. 1082, 1087 [3], 232 S.W.2d 482, 485 [3, 4]. And that damages are not recoverable for a loss not shown to be a proximate consequence of a defendant's wrongful act. Rogers v. Thompson, Mo.Sup., 265 S.W.2d 282, 289 [5, 6]. As is often true, the difficulty lies in the application rather than in the statement of the controlling rule.

Defendants Boss have not cited them, but these two cases decided by courts of appeals in this state involve factual situations essentially similar to that in the instant case and support defendants' present contention on the instant facts: Croak v. Croak, Mo.App., 33 S.W.2d 998, 1001 [5]; Powers v. Kansas City, 224 Mo.App. 70, 79, 80, 18 S.W.2d 545, 550 [3]. In each of those cases there was evidence that a leg injury caused by negligence had resulted in a weak or defective foot or leg which had thereafter caused the plaintiff to fall and sustain further injury. In each case the court held that the second injury was a new and independent one and that the intervening fall was the efficient cause of the second injury and that the subsequent disability was not directly traceable to the original negligent act.

We are of the view that the opinions in those cases are contrary to the result reached by this court in Manley v. American Packing Co., 363 Mo. 744, 253 S.W.2d 165. It is true that the Manley case was a workmen's compensation case and that only workmen's compensation cases are reviewed and discussed in that opinion. It

would appear, however, that the basic reasoning there employed is applicable to a negligence case like the instant one. In Manley we held that there was substantial evidence to support a finding by the triers of fact that "the injuries sustained by Manley in the automobile accident seriously weakened and impaired the use of his right knee, rendering him unstable in walking and, without warning, frequently causing him to fall; that his fall in the orchard while walking on level, unplowed grassland, was due to the weakened and injured knee rather than to some external force; and that the fatal embolism which followed was, in fact, the culmination of a series of injuries, beginning with the original, each in sequence thereafter being the result of the one immediately preceding." 253 S.W.2d 170 [4].

■ We hold that there was substantial evidence adduced by plaintiff in the instant case from which the jury reasonably could have found that the injury to the cartilage in plaintiff's left knee was a natural and proximate consequence of the injury to plaintiff's left leg and foot sustained in the January, 1954, casualty and that, therefore, it was for the jury to determine whether the knee cartilage injury of November, 1954, proximately and naturally resulted from the January accident in which plaintiff's left leg and foot were injured.

Defendants Boss also contend that Instruction 3 was erroneous. The contentions that there was no substantial evidence upon which to base hypotheses, either that Otto Boss failed to keep a lookout or that, if he failed, such failure proximately contributed to cause plaintiff's injuries, have been disposed of by our contrary holding heretofore. The remaining contention is that the instruction gave the jury a roving commission to find that Otto Boss could have avoided the accident in any manner the jury might imagine. The instruction predicated a plaintiff's verdict on findings that, as Boss drove the truck on to the portion of 66 used for northbound traffic and as he began to turn to the left, he failed to keep and maintain a lookout for other vehicles being operated on 66, that a colli-

sion occurred between the Riss and Boss vehicles, that by keeping a lookout Boss would have discovered the presence of the Riss tractor-trailer in time, by the exercise of the highest degree of care and with the means and appliances available, to have prevented the collision between those vehicles, and that such failure to keep and maintain a lookout was negligence which directly caused or contributed to cause a collision between Riss and Boss and directly caused the collision in which plaintiff was injured. The portion of the instruction specifically attacked is this: " * * * that, by keeping the lookout required of him, defendant Otto Boss, Jr., would have discovered the presence of said tractor-trailer of Riss & Company, Inc., in time, by the exercise of the highest degree of care on his part and with the means and appliances available to him, to have prevented said collision * * *."

It is said that the instruction erroneously failed to include any specific hypothesis as to how or in what manner or by what means Boss could have avoided the collision.

 The specific negligence hypothesized as a proximate contributing cause of the Boss-Riss collision was Otto Boss's failure to exercise the highest degree of care to maintain the lookout required by law. A breach of that duty was negligence and if that negligence proximately contributed directly to cause plaintiff's injury, liability followed. Horrell v. St. Louis Public Service Co., Mo.Sup., 277 S.W.2d 612, 614 [1, 2]. The instant instruction hypothesized and the jury found that Boss's negligence (failure to exercise the highest degree of care to maintain a proper lookout) proximately contributed to directly cause plaintiff's injury. There was evidence from which the jury reasonably could have so found. It is true that, even though the jury found that Otto Boss was negligent in failing to keep a proper lookout, still, to find for plaintiff, the jury had to further find that such negligence contributed to directly cause plaintiff's injuries; and to arrive at the last-mentioned conclusion, the

jury had also to find or to reason from the evidence that Otto Boss could have acted within his ability to act so as to have avoided the collision with Riss. The exact manner in which Otto Boss could have acted to avoid his collision with Riss was a finding or inference based upon the evidentiary facts which were adduced in support of the submitted essential finding of causation. When and under what circumstances specific findings of evidentiary facts or specific findings based upon evidentiary facts are an essential part of plaintiff's verdict-directing instruction must be determined upon the particular facts and circumstances of each case. Knight v. Richey, 363 Mo. 293, 303, 250 S.W.2d 972, 978.

 In the instant case there was no substantial dispute among the parties as to the course pursued by Otto Boss from the stop sign to the northbound traffic lanes of 66. Thus, if the jury found, as we have said it reasonably could, that the Riss vehicle was in the range of Boss's view to the right during the time he drove slowly from the stop sign across 66 and into the path of the Riss tractor-trailer, the jury reasonably could also have found, as it was required to do, that Boss could have avoided the collision if he had not been negligent in failing to look out. The exact manner in which, and the means by which, he could have acted to have avoided the collision were not essential hypotheses under the circumstances of the instant case, so long as there was substantial evidence to support a reasonable finding that Boss had the means and ability to have so acted that a collision with Riss would have been avoided. The evidence was such that a jury reasonably could have found that Boss could have avoided the collision had he remained stationary or slowed or stopped or turned left into the inner northbound traffic lane. See Nelson v. Evans, 338 Mo. 991, 995, 93 S.W.2d 691, 693 [2]; cf. Horrell v. St. Louis Public Service Co., supra, 277 S.W.2d 615 [4, 5] and Snyder v. Jensen, Mo.Sup., 281 S.W.2d 802, 809 [2].

Defendants Boss finally contend that instruction 4, given at defendant Riss's re-

quest, was erroneous and prejudicial to defendants Boss. That instruction told the jury that if it found that either the Riss driver or the Boss driver, or both, "failed to exercise the highest degree of care in any respect, and thereby directly contributed to cause plaintiff to be injured; nevertheless, if you further find from the evidence that the plaintiff, in operating the trailer truck * * *, negligently failed to exercise the highest degree of care by not keeping a careful lookout ahead of him for vehicles traveling ahead of him on Highway 66, or for vehicles coming into said highway from Highway 50, as he approached the junction of said two highways, or by operating the trailer truck which he was operating at a rate of speed so as to endanger the property of another or the life or limb of any person; and if you further find from the evidence that such failure to exercise the highest degree of care in either of said respects * * * directly contributed to cause plaintiff to be injured, then plaintiff is not entitled to recover against any of the defendants and your verdict should be against the plaintiff and in favor of all the defendants."

█ It is said that the instruction was misleading because in directing that if either Riss's driver or Boss's driver, or both of them, "failed to exercise the highest degree of care *in any respect*" [italics ours], the instruction permitted the jury to find defendants Boss negligent in respects not submitted by appropriate instructions. We find no merit in that contention for the reason that when all the instructions were read as a whole the jury would understand that the phrase "in any respect" referred to any respect submitted in other instructions. This, because plaintiff's recovery instructions 2 and 3 limited defendants' liability to the specific negligence therein submitted, and instruction 4 did not purport to predicate a basis for plaintiff's *recovery,* but, on the contrary, in its directive part, dealt only with the findings necessary to *defeat* plaintiff's recovery.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.