WALTER DAVIS, Appellant, v. ALBERT HOWELL.—27 S. W. (2d) 13.

Division Two, April 7, 1930.

*Dale E. Montgomery* and *Lorts & Brewer* for appellant.

*Hiett, Lamar & Covert* for respondent.

WHITE, J.—The plaintiff was a truck driver living at Houston, Texas County. On July 20, 1926, he was driving a Ford truck with a load of freight from Cabool to Houston on Highway 63. At a point called Hog Creek Hill he had tire trouble. The distance from that point to Houston is not stated, nor the nature of the tire trouble, but it may be inferred that it was a puncture. He drove his truck to the right-hand side of the highway, stopped "not over a foot from the ditch," jacked up his truck and put on his emergency brake. In front of him in another truck was one Jack Sooter. He took off his affected tire, put it in Sooter's truck and went on with Sooter to Houston, where he got another tire. Then he and Sooter, taking the new tire, with one Frank Jones who was on his way to Cabool, drove back in Jones's car to the place where plaintiff's truck was stopped.

Davis left his truck about sundown; he got back to it about nine o'clock. Jones, with his car headed south, stopped on the opposite side of the road while the plaintiff and Sooter began to put the new tire on the truck. Jones saw the car of defendant Howell approaching from the direction of Cabool, called the attention of Davis and Sooter to it, and suggested that they "put the turtle lid down," which they did. Just what that means is not explained. When the defendant's car was near the bridge at the foot of the hill, something like a quarter of a mile from where Davis's truck was parked, Jones started on south toward Cabool. He had proceeded about twenty steps—in further examination he said about sixty feet—when he met and passed the defendant's car. The defendant drove on and while Davis and Sooter were putting on the lugs he crashed into the truck, causing severe injuries for which the plaintiff sued.

Jones testified that Howell's car had very bright lights; that his own car had dim lights "like a dim Ford light." Sooter said defendant's car was going thirty-five or forty miles an hour. Jones testified that his own car was going ten or fifteen miles an hour when he met Howell. After the collision Jones made an examination to see how far the truck had been knocked, and found it was seven steps from the rear wheel of Davis's truck to the front wheel of Howell's car. There were no lights on Davis's truck at any time.

Defendant introduced no evidence.

The trial court sustained a demurrer to plaintiff's evidence; the appellant took an involuntary nonsuit with leave. Judgment for defendant and appeal followed in due form.

1. Respondent calls attention to the Laws of 1921, First Extra Session, page 95, section 22, which provides among other things: "For the purpose of revealing its position and direction, a motor vehicle, while on the highway, whether in operation or at rest, during the period from one-half hour after sunset to one-half hour before sunrise, and at all times when fog or other atmospheric conditions render the operation of motor vehicles dangerous on the highway, shall carry lighted signal lamps as herein required."

The respondent contends that because the plaintiff failed to have any lights he was guilty of such contributory negligence *per se* that he is not entitled to recover. The trial court apparently took the view that such is the law, regardless of whether the negligence of the plaintiff contributed to his injury or not. The rule upon that subject is stated in Monroe v. Chicago & Alton Railroad Co., 280 Mo. 1. c. 489:

"Contributory negligence, to bar a plaintiff, must enter into and constitute some part of the whole negligence which is the efficient or proximate cause of the injury."

Many other recent cases announce the same doctrine. Unless the failure to place lights on the truck was a proximate or efficient cause of the injury, then the plaintiff should not have been non-suited on that ground. A farmer living near testified that some time after dark he saw the truck parked on Hog Creek Hill, the moon was shining and he could have seen that truck from a distance of 150 to 200 yards. The road from the south for some distance was straight, the truck was a large, bulky object, containing 3800 pounds of freight. This farmer was going from Cabool to Houston. He came along and saw Jones's car fifteen or twenty steps from the truck, Jones's car facing south, lights still burning. When he came around the curve of the bridge something like a quarter of a mile south he saw where Howell's car was standing. It seems that the Jones car was stopped down the road at the place where he heard the collision; the witness could see the truck notwithstanding the lights from Jones's car; the lights did not blind him.

The evidence shows that the lights from Howell's car were bright; if they shone on the truck as they should have done he could have seen it notwithstanding the truck displayed no lights. If he did see it and ran into it negligently, then the negligence of the plaintiff in having no lights on his car did not contribute to his injury. The purpose of having his lights was to reveal the position of his truck. If the position of his truck was known to the defendant then the absence of lights on it had nothing to do with the collision. Under the circumstances of the case it was a question for the jury, whether the defendant, with his lights shining straight down the road towards that bulky object, saw it in time, with the extraordinary care required

by Section 19 of the Act of 1921, to swerve to one side and avoid striking it. The jury might infer from the circumstances that he did see what was in plain view, as well as he could if the light had been displayed. Or it might infer that the absence of lights contributed to the collision.

II. But a case was clearly made out under the humanitarian rule as defined and explained in Banks v. Morris & Co., 302 Mo. 254, l. c. 267, and later cases.

Here the road was straight. The plaintiff was under statutory duty to exercise the highest degree of care. He was bound to keep a constant lookout and see whether any person or object was in the path of his progress. If the defendant had been looking, the evidence indicated that his lights would have shone upon this bulky object in the road, when he was 150 or 200 yards distant. He might have seen it by moonlight if he had no lights. It cannot be said that the lights from Jones's car blinded him so that he could not see, according to the evidence of Ernest Nagle. Besides, the evidence showed that he met Jones in his car sixty feet south of where the truck stopped. Before Jones's car could come abreast of him the lights of Jones's car would have been thrown to his left in such way that only his own lights would have any effect, and shining down the road apparently would have revealed the truck if he had been looking. In that sixty or more feet he might have turned aside to avoid striking the truck. It was as close to the ditch as it could go, and the evidence shows there was room in the road for three cars to pass abreast to the left of defendant's truck. It was clearly for the jury to say whether the defendant, in the exercise of even ordinary care, could have seen, and could have swerved and prevented a collision with the truck and the injury to plaintiff, or could have sounded a warning and thus have enabled plaintiff to escape.

The respondent claims that the petition is insufficient to support a judgment under the humanitarian rule; that the allegations of the petition and the evidence did not authorize a submission of the case under the rule. We have already pointed out that the evidence was sufficient for the purpose. Respondent calls attention to the allegations of the petition, showing primary negligence, that the defendant's car was driven at excessive speed, had insufficient lights and defective brakes, and then quotes from Banks v. Morris, 302 Mo. l. c. 267, the constitutive facts of a cause of action under the humanitarian rule, and claims that the allegations of negligence mentioned are entirely inconsistent with an action under that rule. Appellant in that overlooks further allegations of the petition, as follows:

"Plaintiff further states that after plaintiff was in a position of imminent peril, as aforesaid, and defendant saw, or by the exercise of ordinary diligence could have seen plaintiff was in such position of imminent· peril in time for defendant thereafter by the exercise of ordinary care, with the means and appliances at hand, and with reasonable safety to defendant's car and its occupants to have stopped said car, checked the speed thereof, or swerved the same and thus and thereby avoided collision to plaintiff, the defendant negligently, with a gross disregard for the rights and safety of plaintiff's life, person and property, did drive at an excessively high rate of speed and with great force into and against the truck of plaintiff and against, over and upon the body and limbs of plaintiff, and by means thereof did then and there and thereby and as a direct and proximate result of said negligence, imprudence and carelessness of the defendant as aforesaid. . . ."

There was no demurrer to the petition nor any attack upon it by motion or otherwise on account of duplicity or insufficient allegations. Besides, there is no necessary inconsistency between allegations of primary negligence and allegations of negligence under the humanitarian rule under circumstances such as appear in this case.

The judgment is reversed and the cause remanded. *Blair, P. J.,* concurs; *Walker, J.,* not sitting.