**Robert L. LEMKEN, Appellant,**

v.

**BROOKS TRUCK LINES, INC., and Elbel Construction Company, Respondents.**

No. 46408.

Supreme Court of Missouri,

Division No. 1.

April 13, 1959.

Irving Achtenberg and Robert A. Sniezek, Kansas City, for appellant.

David R. Hardy, David H. Clark, Kansas City, for respondent Brooks, Sebree, Shook, Hardy & Ottman, Kansas City, of counsel.

Roy F. Carter, Sprinkle, Carter, Sprinkle & Larson, Kansas City, for respondent, Elbel Const. Co.

COIL, Commissioner.

Plaintiff brought an action for $36,000 as damages for alleged personal injuries which he averred he sustained as a result of the automobile he was driving running into the left rear of a parked unlighted trailer unit. At the close of his evidence, the trial court directed verdicts for both defendants. Plaintiff contends on this appeal that he made a submissible case against each defendant while defendants contend, inter alia, that plaintiff was guilty of con-

tributory negligence as a matter of law. We think defendants' contention in that respect must be sustained.

■ We are mindful of the fact that negligence is usually a jury question, and always is unless it may be said from all the evidence and the reasonable inferences therefrom, viewed in the light most favorable to plaintiff, that the only reasonable conclusion is that plaintiff was proximately negligent. Creech v. Riss & Co., Mo., 285 S.W.2d 554, 556. We shall state plaintiff's evidence (the only evidence in the case) in the light most favorable to him.

Defendant Elbel Construction Company, a corporation, was engaged in the construction of new homes in a subdivision in Kansas City known as Vineyard Valley. Defendant Brooks Truck Lines, Inc., a corporation, was a common carrier who, pertinent to the instant case, operated a tractor trailer and transported siding and roofing from St. Louis to Elbel in Kansas City. The material arrived at the subdivision some time on Friday, December 10, 1954 and, after conferring with Elbel's representative and subcontractor, the Brooks driver parked the trailer to permit it to be unloaded at a later time, detached the trailer, and departed in the tractor.

Chelsea Avenue runs north from 45th Street to Hardesty (actually, it is Hardesty on the east and 44th Street Terrace on the west, but for clarity we shall call the east-west intersecting street, Hardesty). The continuation of Chelsea west of Hardesty is 44th Street which runs north for a short distance and then curves to the left until it becomes an east-west street. Forty-fourth Street had been paved with asphalt, with sloping concrete curbs on each side and was 27 feet wide from curb edge to curb edge.

The trailer was parked on 44th Street parallel with the east curb line and so that its rear was from 80 to 150 feet north of the north curb line of Hardesty, and with its inner right rear dual wheels on the east edge of the east curb and with its outer right rear dual wheels on the ground east of the east edge of that curb. The trailer unit was 32'4" long, 8' wide, and 12'3¾" high at the rear. From the ground to the floor of the trailer was 55%₁₆ inches.

The casualty occurred about 10 p. m. on Saturday, December 11, 1954. Unfortunately, plaintiff remembers nothing from the time he retired the preceding night until he awoke in the hospital the following morning. A police officer who was cruising in the neighborhood and who at the time was traveling west on Hardesty some 150 to 250 feet from the collision point, saw a cloud of dust in the area of the collision. He continued west until he reached 44th Street, turned right and, as soon as his headlights had swung so that they disclosed the east side of the street, he immediately saw plaintiff's automobile at the rear of the trailer unit which he estimated to be 80 to 90 feet away at the time. Plaintiff was just then leaving his automobile and the witness assisted him to the police car from which an ambulance was called. During the wait, plaintiff appeared rational and when the officer asked what happened, plaintiff "stated that he was northbound on Chelsea at 20 miles an hour and did not see 'No. 2', which was the trailer, until the time of the impact." The officer noticed a moderate odor of alcohol on plaintiff's breath. The right front of plaintiff's automobile struck the trailer's left rear corner. The left headlight on plaintiff's automobile was burning and appeared to be of "normal illumination." The right headlight had been broken in the collision. There were no skid marks made by either vehicle but it appeared that the trailer had been knocked six to eight feet north by the impact. By turning or veering left two or three feet, i. e., so that the right side of his automobile would have been two to three feet farther to the left, plaintiff's automobile would have cleared the trailer unit. The distance from the left side of the trailer to the outer edge of the west curb was 19 feet. There was no evidence of any other traffic or of the presence of any other vehicle. While

there was evidence as to where the left curve of 44th Street began and of a "dip" in the intersection of 44th and Hardesty, and while there were various estimates (80 to 150 feet) as to how far west of Hardesty the trailer was parked, nevertheless the evidence was that the trailer was parked on the "straightaway" and that as one approached the collision point from the south, i. e., driving north on Chelsea as was plaintiff, he had an unobstructed view for the last 250 to 300 feet of his approach.

The night was dark and clear. Plaintiff's brakes and lights had been working perfectly prior to the accident. There were no lights on the trailer and there was no other device warning of the trailer's presence. There was no artificial illumination of any kind in the vicinity at accident time other than the light from plaintiff's headlights.

The police officer took two photographs at the collision scene. One of them shows the rear of the trailer to be dirty and dusty with some lighter spots on its surface. It shows what appear to be reflectors and taillight lenses across the bottom edge of the rear of the trailer body. The evidence was that the pictures were taken with a flash bulb attachment. There was no evidence as to what effect the dirt and dust on the trailer's rear had with respect to its visibility under the circumstances and conditions of the instant case and we are unable to arrive at any conclusion in that respect favorable to plaintiff from the picture alone.

Plaintiff testified that he had said in police court he was traveling at 20 to 25 miles per hour based solely on what he had read in a police report. The evidence was that at 20 miles per hour, under the conditions obtaining, plaintiff could have stopped his automobile in 22 feet and at 25 miles per hour in 35 feet; that three fourths of a second is normal reaction time. It follows that at 20 miles per hour plaintiff could have stopped his automobile on the occasion in question in a distance of 44 feet including reaction time, at 25 miles per hour in 62½ feet, and that in order to have swerved two or three feet to his left and thus to have cleared the trailer, plaintiff would have needed only an instant more than his reaction time. At 20 miles per hour, he would have traveled 22 feet during his reaction time and, at 25 miles per hour, 27½ feet. Adding to each distance the short space needed to have swung his right front fender to the left clear of the trailer, it would appear that plaintiff could have avoided the collision had he seen the trailer at any time prior to the time he was 25 to 30 feet away.

We have set forth the pertinent evidence in some detail, but the upshot of it is that plaintiff's evidence, considered favorably to him and giving him the benefit of any favorable reasonable inferences shows that he drove north for a block plus the width of an intersecting street and an additional 80 to more than 100 feet into the left rear corner of a parked unlighted trailer despite the facts that his view to the place where the trailer sat was unobstructed for at least 250 feet, that the night was dark and clear, that his headlights and brakes were in good working order, and despite the fact that he needed to turn to the left sufficiently to move his car only two or three feet to have cleared the trailer, and despite the fact that he could have so maneuvered in a distance not in excess of 30 feet.

If plaintiff's headlights were in good working order and illuminated normally, it must be assumed that they would have disclosed the unlighted rear of the trailer for a greater distance than the 30 feet needed to have avoided the collision. Section 304.-350 RSMo 1949, V.A.M.S. in effect at the time of the instant accident, provided that all road lighting beams, whether on so-called high, composite, or low, should be "so aimed and of sufficient intensity to reveal a person or vehicle at a distance of at least one hundred feet ahead." It should not be assumed in view of the testimony that plaintiff's headlights were in good

working order and illuminated normally, that they were below legal requirements. Peterson v. Tiona, Mo., 292 S.W.2d 581, 583.

Plaintiff's evidence that the night was clear and dark negatived a possibility that atmospheric conditions might have contributed to poor visibility in the beam of headlights in good working order. As noted, the picture of the rear of the trailer showing it was covered with dirt and dust, standing alone, was not evidence from which a conclusion reasonably could be drawn that the color of the trailer's rear was such as to obscure it from the view of the driver of an approaching automobile with proper headlights burning.

Furthermore, there was no evidence of any diverting or distracting event or of an existing causal condition (e. g., the close proximity of some person or thing, or a visibility condition created by the lights of oncoming traffic or by other artificial illumination) during plaintiff's approach to the collision point, nor were there circumstances shown in evidence supporting a reasonable inference of the existence of any such causal event or condition.

■ Plaintiff did not remember the circumstances of the collision. Consequently, he could not and did not attempt to explain why under the shown circumstances he ran into the rear of the parked trailer. The only reasonable conclusion from the evidence is that plaintiff failed to see that which in the exercise of the highest degree of care he should have seen when he was at least 100 feet away and his evidence indicates no reason or excuse for such failure to have seen the trailer in time to have avoided it. Under the circumstances, plaintiff failed to exercise the highest degree of care in keeping a lookout and the conclusion is compelled that plaintiff was negligent in driving his automobile into the rear of the trailer unit. See State ex rel. Kansas City Southern Ry. Co. v. Shain, 340 Mo. 1195, 105 S.W.2d 915, 918, 919.

Plaintiff to support his contention that he was not contributorily negligent as a matter of law points to these matters which he characterizes as "unusual conditions" and asserts that because of them whether he was proximately negligent was a jury question. He says the night was very dark, there were no street lights or house lights in the vicinity, and there were no lights or other illumination or warning on or about the trailer. The only evidence in the record on the subject indicates that the dark night and lack of artificial illumination may have made the rear of the trailer more visible in the beam of headlights than it would have been otherwise. The lack of lights on the parked trailer may have been evidence of defendants' negligence but it does not, in the reviewed circumstances of this case, explain or excuse the failure of plaintiff to have seen the unlighted trailer unit in time to have avoided it. Another "unusual condition," says plaintiff, was the dirt on the rear of the trailer which also covered, he says, the reflectors. The picture may show that the right reflector was dirty but, as noted heretofore, there was no evidence that the dirt and dust on the trailer's rear caused the trailer as such to blend with the night or to be obscure or invisible in the beam of headlights. Another condition mentioned was that the trailer was parked on a curve. While the evidence may support the assertion that the trailer was parked on a curve from the standpoint of precise mathematical calculation, the fact remains that plaintiff's witnesses said the trailer was parked on the "straightaway" so that the left curve, even though it may have begun at a place south of where the trailer was parked, was not appreciable enough to have been noticeable. The last condition noted by plaintiff is that the pavement was asphalt and there was dirt and dust on it from the muddy surrounding area wherein houses were in the course of construction. There was no evidence, however, that the asphalt surface, its color, or the presence or color of the mud and dirt thereon had any effect upon the failure of

plaintiff to have seen the trailer in ample time to have avoided colliding with it.

Plaintiff suggests that he may have in fact swerved to the left in an attempt to avoid the collision but was unable to swerve sufficiently. We think plaintiff negatived his right to that inference by adducing the evidence that he did not see the trailer until the time of the impact.

Plaintiff has cited ten cases. We have examined all of them. They are all distinguishable on their facts. We notice specifically the three authorities upon which plaintiff principally relies. S.C.Rule 1.08 (a), 42 V.A.M.S.

In Creech v. Riss, supra, there were many surrounding conditions and circumstances, set forth in detail at 285 S.W.2d 558 (like or similar conditions do not, as noted, exist in the instant case), which caused us to conclude that "it was for the jury to say whether plaintiff, if he had properly looked, must have seen the collision or the resulting blocking of the highway in time to have stopped prior to colliding with the Boss truck."

In Haley v. Edwards, Mo., 276 S.W.2d 153, it was contended that plaintiff was negligent as a matter of law in driving 40 miles per hour when he had forward vision of only 25 or 30 feet. In holding that plaintiff's negligence was a jury question, the court pointed out that a motorist is not necessarily contributorily negligent as a matter of law solely because he drives at a speed which prevents stopping in the range of his visibility, but all the facts and circumstances must be taken into account, and concluded that conditions there shown in evidence, 276 S.W.2d 158, 159, including the "dirty grey" color of the unlighted truck with which plaintiff collided, were sufficient to present a fact issue as to whether plaintiff's 40 m. p. h. speed was excessive under the circumstances. We point out that in the Haley case, unlike the fact in the instant case, there was testimony that the "dirty grey" color of the dust-covered truck "made it difficult to see against the dark background of the hill beyond and the concrete pavement." 276 S.W.2d 153, 159.

In Parsons v. Noel, Mo., 271 S.W.2d 543, at page 547, the court said, "Taking into account: The topography of the highway over which Parsons was traveling as he approached the collision site; that the pavement was black; that the truck was stationary on the traveled portion of the pavement; that neither the truck's headlights nor rear lights were on; and that there was a car coming from the south with its headlights on, the rays of which shone to the north beyond the standing truck, we think it was peculiarly within the province of the jury to say whether Parsons was negligent or whether, irrespective of his speed, he was negligent in failing to slacken, stop or swerve in time to have avoided the collision."

We also note that all three of the foregoing cases involved collisions with stationary vehicles which were blocking the travel portions of highways outside the limits of a city or town, places where the plaintiffs had no reason to anticipate the presence of stationary trucks. In the instant case the unlighted trailer was parked at the curb of a city street, where vehicles normally park and are expected to be.

The judgment is affirmed.

VAN OSDOL, and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.