Thomas Charles WIBER, Appellant,

v.

Donald H. MANA, Jr., Respondent.

No. 48689.

Supreme Court of Missouri,

Division No. 2.

April 9, 1962.

Henry W. Simpson, William L. Mason, Jr., St. Louis, for appellant.

Evans & Dixon, Eugene K. Buckley, St. Louis, for respondent.

EAGER, Presiding Judge.

Plaintiff sued for personal injuries arising out of an automobile collision occurring in St. Louis County on November 4, 1959. Following a verdict for defendant, and the overruling of plaintiff's motion for a new trial, plaintiff appealed. The point raised here involves the propriety of an instruction, but we shall need to state the facts.

Plaintiff owned a 1958 Berkeley sports car; this was a very small car, less than 4 feet in width. Just prior to the collision he had been at a cocktail lounge called the "Cove," where he met a young lady whom he knew. At the time of the collision about 1:30 a.m., he was endeavoring to take her home in that car. Defendant had also been at the "Cove," and he left at about the same time as plaintiff, driving a 1952 Plymouth. The collision occurred on the eastbound section of Natural Bridge Road, about 90 feet east of the cloverleaf located at the intersection of Natural Bridge and Jennings Road. The "Cove" is perhaps a short block north of Natural Bridge, and is on or very near Jennings. Plaintiff had driven south on Jennings in order to go east on Natural Bridge. At the cloverleaf his car stalled in a puddle of water, but he managed to get it started after about 5 minutes. Proceeding thence east on Natural Bridge, his car stalled again about 90 feet east of the cloverleaf and near the center of the three-lane eastbound section. The three-lane roadway was 30 feet wide. If plaintiff's car was not precisely in the center lane, it was in such a position that cars readily passed him on both his right and left. The car had been stalled for at least 5 minutes at the time of the collision; plaintiff remained in the car and intermittently used the starter. Defendant, upon leaving the "Cove," had driven westward a long block and entered Natural Bridge there; he explained that this was due to his parking location, but that is immaterial. He then proceeded easterly and came upon plaintiff's stalled car. According to defendant, he was traveling about 25 miles an hour, it was raining and was dark, and the rain obscured his vision. He

further testified: that when he first saw plaintiff's car it was right in front of him, about two ordinary car lengths ahead; that he applied his brakes and swerved to the left, but that his right front fender struck the car, pushing it chiefly to the side; that there were no lights on plaintiff's car. His direct statement that there were no lights was followed by statements to the effect that he saw no taillights burning and that he looked in such a manner that he would have seen them. Defendant's right front headlight was broken and his right front fender dented.

Plaintiff's evidence was, in substance: that it had been raining, but he thought it had stopped; that this location was near a Katz store, where the inside night-lights were on; that there was a street light nearby, and that the visibility was good; that one car stopped and the driver offered to push him, but he was afraid that the bumper would override his; that his headlights and taillights were working properly when he parked at the "Cove" about midnight; that both worked on one switch, and that his lights were on while he was stalled on Natural Bridge; that he was hit violently from the rear with no prior warning. In view of the limited issue here, the other evidence is not material.

Plaintiff submitted a negligent failure of defendant to keep a vigilant lookout as the direct cause of the collision and his injuries. Defendant's sole instruction on the merits was his No. 5, which was as follows: "The Court instructs the jury that the law of the State of Missouri requires that every person who is in custody of a motor vehicle on any street from a half hour after sunset to a half hour before sunrise shall have displayed upon the rear of said vehicle a lighted red lamp.

"In this regard, the Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence, at a time between a half hour after sunset and a half hour before sunrise, plaintiff Thomas Charles Wiber was in cus-tody of and was operating his Berkeley sports car mentioned in evidence eastwardly upon Natural Bridge Road, and that said sports car became stopped upon the east-bound traveled portion of said Natural Bridge Road, and if you further find that plaintiff permitted said sports car to be and remained stopped upon the eastbound travel-ed portion of Natural Bridge Road without having a lighted red lamp displayed on the rear of said sports car, and that in so per-mitting said sports car to be and remain stopped without having a lighted red lamp displayed on the rear thereof, if you so find, the plaintiff Thomas Charles Wiber failed to exercise the highest degree of care and was negligent, and if you further find that such negligence, if any, on the part of the plaintiff, directly contributed to cause de-fendant's automobile to collide with the rear of plaintiff's said sports car, then you are instructed that your verdict should be against the plaintiff and in favor of the de-fendant, and this is true regardless of whether or not defendant was also negli-gent."

Plaintiff's contentions of error concerning that instruction, all of which were fairly raised in his motion for a new trial, are: that the instruction "must" be based on § 304.450, RSMo 1959, V.A.M.S., and, being a verdict-directing instruction, it must hy-pothesize all essential elements; that it fails to negative the statutory exception permitting cities, towns and villages to regu-late the matter of lights by their own parking regulations; also, that the instruction is confusing and misleading in using the term "lighted red lamp" instead of "a red light."

It was obviously necessary for this in-struction to hypothesize all the material elements of a defense of contributory negli-gence. And we may assume, as plaintiff suggests, that the instruction was intended to present a defense of contributory negli-gence based on our statutes and not on the common law. But it does not follow, as plaintiff suggests, that the instruction "must * * * be based on * * * Sect. 304.450"

RSMo 1959, V.A.M.S. (to which revision all statutory references herein will be made). Section 304.450 is as follows: "Parked vehicles—how lighted—exception. Whenever a vehicle is parked or stopped upon a highway or shoulder adjacent thereto, whether attended or unattended during the times when lighted lamps are required, such vehicle shall be equipped with one or more lamps which shall exhibit a white light on the traffic side visible from a distance of five hundred feet to the front of such vehicle and a red light visible from a distance of five hundred feet to the rear; provided, that local authorities in cities, towns and villages may provide by ordinance that no lights need be displayed upon any such vehicle when stopped or parked in accordance with local parking regulations upon a highway where there is sufficient light to reveal any person or object within a distance of five hundred feet upon such highway. Any lighted head lamps upon a parked vehicle shall be depressed or dimmed." Plaintiff suggests that it is "likely" that Pine Lawn had an ordinance regulating lights on "stopped" vehicles, and that Instruction No. 5 should have required a finding thereon. It is doubtful, to say the least, if the evidence really shows that this collision occurred within the limits of Pine Lawn, but we do not rest our decision upon that deficiency.

 Plaintiff says that § 304.450, just quoted, is the only statute which "touches the subject of lights required on an auto stopped on a highway * * *." And he further says that defendant elected to submit his defense on a violation of this statute, and thereby abandoned any other theory of contributory negligence, citing Guthrie v. City of St. Charles, Banc, 347 Mo. 1175, 152 S.W. 2d 91. There need be no argument about the general principle that where a party submits only one or more of his pleaded issues or specifications of negligence, he abandons the rest. But that is not quite our point. Defendant pleaded contributory negligence generally, and he submitted contributory negligence in the terms of Instruction No. 5. That instruction may rest upon any regulatory statute which supports it, and it does not follow that it rests upon § 304.450. Section 304.270(9) provides when "lighted lamps" shall be required (and there can be no controversy that 1:30 a.m. is within the required period). Section 304.310 provides in part: "When lights required. No person shall drive, move, park or be in custody of any vehicle or combination of vehicles on any street or highway during the times when lighted lamps are required unless such vehicle or combination of vehicles displays lighted lamps and illuminating devices as this chapter required. * * *" Section 304.380 provides, in part: "Tail lamps. 1. Every motor vehicle and every motor-drawn vehicle shall be equipped with at least one rear lamp, not less than fifteen inches or more than forty eight inches above the ground upon which the vehicle stands, which when lighted will exhibit a red light plainly visible from a distance of five hundred feet to the rear; * * *." The terms of § 304.-310, supra, are sufficiently comprehensive to cover this situation and it, together with § 304.380, supports the instruction. Certainly the defendant was "in custody" of a vehicle on a street or highway at a time when "lighted lamps" and "one rear lamp" were required. If § 304.450 were applicable, it could not exclude the applicability of the other sections. There was and is clear statutory authority for this instruction independent of § 304.450. Those statutory provisions contain no exceptions for the provisions of municipal ordinances, and we hold that defendant was entitled to submit an instruction founded upon them, disregarding the exception of § 304.450. Even if we should assume the applicability of § 304.450 here, plaintiff testified that no parking was permitted in this particular area, and his binding admission of that fact would, in itself, eliminate any possible effect here of "local parking regulations." Moreover, it seems obvious that the exception of § 304.450 was intended to apply to *parking,* and not to the temporary stopping of a stalled car in the middle of a through street or highway. It was wholly unnecessary for defendant to

hypothesize the absence of any "local parking regulations" here.

 It has been held on various occasions that it is negligence per se to allow a vehicle to remain at rest without lights (or without a taillight) on a highway, during the period when lights are required. Cotton v. Ship-By-Truck Co., Banc, 337 Mo. 270, 85 S.W.2d 80; Nickels v. Borgmeyer, Mo.App., 258 S.W.2d 267; Haley v. Edwards, Mo., 276 S.W.2d 153; Taylor v. Silver King Oil & Gas Co., Mo.App., 203 S.W.2d 147; Roux v. Silver King Oil & Gas Co., Mo.App., 244 S.W.2d 411; Ensminger v. Stout, Mo.App., 287 S.W.2d 400; Leek v. Dillard, Mo.App., 304 S.W.2d 60. In fact, defendant here assumed a somewhat greater burden than was necessary when he required a specific finding to the effect that defendant was *negligent* in failing to have a rear lamp. For cases involving somewhat similar situations or submissions, see: Cox v. East St. Louis City Lines, Mo.App., 181 S.W.2d 193; Arky v. Kessels, Mo.App., 262 S.W.2d 357; Leek, supra; Roux, supra; Ensminger, supra.

 The remaining point submitted is that the instruction was confusing and misleading because it referred to a "lighted red lamp" required at the rear of the car, instead of a "red light" as mentioned in § 304.450. Proceeding, and citing Webster's International Dictionary, 2nd Ed., counsel say that "lamp" primarily means a "vessel with a wick * * *," and that the average juror would take this to mean that plaintiff was required to hang a *red kerosene lamp* or *lantern* on the rear of his car, and that a regular taillight was not enough, especially since no reference was made during the trial to a red lamp. This argument is not at all convincing,—either from a legal standpoint or that of common sense. Section 304.270 (9) refers to "lighted lamps"; § 304.310 refers to "lighted lamps"; and § 304.380 (taillamps) requires "one rear lamp * * * which when lighted will exhibit a red light * * *." There was clear statutory authority for the use of the term. In our world today there are millions of electric *lamps;*

no jury could be so dull and unimaginative as to think that this instruction required a lantern. If more were needed, we note that counsel for defendant specifically explained in the argument, after quoting from the instruction the reference to a lighted red lamp,—"that is what you and I call a tail light, a lighted tail light * * *"; and he continued thereafter to refer to a "taillight." He put the ultimate issue to the jury, thus—"Was there a tail light on that automobile,"—and argued that all the lights were switched off to conserve the battery. Plaintiff's counsel joined in that issue by asking the jury if it believed that plaintiff's "tail lights honestly were out." Under these circumstances it is clear that the issue of taillight or no taillight was plainly submitted and determined and no one was misled. We have referred to the arguments solely for that purpose.

We find no error in the giving of the instruction and the judgment is affirmed.

All of the Judges concur.