**Winston E. WALKER and Margaret Walker, Plaintiffs-Appellants,**

**v.**

**B. F. MASSEY, Defendant-Respondent.**

**No. 8606.**

Springfield Court of Appeals.

Missouri.

June 10, 1967.

Charles D. Tudor, A. L. Shortridge, Joplin, for plaintiffs-appellants.

James A. Dunn, Carthage, for defendant-respondent.

**16**

STONE, Presiding Judge.

■ In this jury-tried action for the alleged wrongful death of their unmarried minor son, Robert Allen Walker, then seventeen years three months of age, as the result of a no eyewitness vehicular tragedy in Joplin, Missouri, on August 3, 1965, plaintiffs obtained a unanimous jury verdict for $12,500 upon which judgment was entered. Sections 537.020, 537.080, 537.090. (Except as otherwise specifically stated, all statutory references herein are to RSMo 1959, V.A.M.S.) There was no after-trial motion to set aside that verdict and judgment and for entry of judgment in accordance with defendant's motion for a directed verdict at the close of all the evidence [V.A.M.R. Rule 72.02]; but defendant's timely motion for new trial was sustained on the specified ground that "plaintiffs' decedent was guilty of contributory negligence as a matter of law." V.A.M.R. Rule 78.01. On this appeal by plaintiffs who charge that the circuit court erred in so holding, defendant undertakes to support the order on two grounds, namely, that "there was no evidence of any actionable negligence on the part of defendant which was the proximate cause of the accident" and that "plaintiffs' decedent was guilty of contributory negligence as a matter of law, which negligence was the proximate cause of the collision." With the case in this posture, our factual review should and does give appropriate recognition to the basic principle that, in determining the submissibility of plaintiffs' case and whether their decedent was contributorily negligent as a matter of law, we must consider the evidence in the light most favorable to plaintiffs, must accord to them the benefit of all supporting inferences fairly and reasonably deducible from the evidence, and must disregard defendant's evidence except insofar as it may aid plaintiffs' case. Wilson v. Shumate, Mo., 296 S.W.2d 72, 74(1); Bridges v. Arkansas-Missouri Power Co., Mo.App., 410 S.W.2d 106, 107–108(1); Clohesy v. Century Electric Co., Mo.App., 142 S.W.2d 780, 782(1).

The tragedy under consideration occurred about 10:30 P.M. on Tuesday, August 3, 1965, when a 1959 Renault sedan driven by plaintiffs' son, then northbound on Indiana Avenue, ran under and into the rear end of defendant Massey's unlighted 1950 Ford two-ton truck with flat bed, then parked, headed north, at the east curb in front of a new residence numbered 2427 Indiana. Indiana Avenue is a "heavily-traveled" north-south street with an asphalt roadway 36 feet in width between the concrete curbs. The place of accident was in a new residential area within the city limits of Joplin and near the center of a long double-length block on Indiana between 24th Street and 26th Street, intersecting east-west streets. The residence at 2427 Indiana was the southernmost house on the east side of that double-length block. There were no houses on the west side of that block but the campus of Joplin High School lay just north of 24th Street on the west side of Indiana.

Defendant's Ford truck with a full load of blue grass sod on the flat bed had been parked about 7 A.M. on August 3, the date of accident, in front of the residence at 2427 Indiana where it was still standing when plaintiffs' decedent ran into it about 10:30 P.M. that same day. The sod was loaded in rolls with the grass on the inside and the dirt on the outside of each roll. Since the sod was hauled for a contractor whose employees were to lay it, defendant and his driver simply parked the loaded truck and then departed. Defendant returned to the parked truck between 6 P.M. and 7 P.M. the same day with the intention of taking it home if the sod had been unloaded. However, about one-third of the sod was still on the front end of the flat bed, so defendant did not move the truck.

The outside right rear dual tire on the parked truck was about four inches from the east curb. The flat bed constructed of "wood and steel" was 18 feet 1½ inches in length and 7 feet 10¾ inches in width.

The height of the truck bed above the pavement was not shown specifically, but photographs in evidence, taken at the scene of accident before either vehicle was moved, show that the front end of the Renault, a so-called "compact" automobile, ran under the rear end of the bed which protruded 4 feet 4½ inches beyond the rear wheels of the truck, and that there was a solid, shattering impact between the rear end of the truck bed and the windshield and upright front corner posts of the Renault.

The rear end of the truck was equipped with four lights, to wit, a "clearance light" attached to the under side of each rear corner of the truck bed, a large "stop light * * * a big light when it lit up" attached to the frame about 18 inches from the protruding rear end of the truck bed, and a smaller "stop and tail light combined" also mounted on the frame to the left of and just below the large stop light. Each of these lights had a red lens over it, but none was burning on the night of accident. The nearest street light was at the intersection of Indiana and 26th Street, approximately 270 feet south of the rear end of the parked truck. As to the character of the night on which this accident occurred, the transcript affords only such information as may be gleaned from the scant, unelaborated statements that the night was "dark" and Indiana was "a dark street" and from defendant's agreement with plaintiffs' counsel that there had been no rain that day "to my knowledge."

In approaching the parked truck from the rear, northbound motorists on Indiana, such as plaintiffs' decedent and the witnesses to whose testimony we shortly refer, traveled up a gentle, uninterrupted incline with no perceptible change of grade to tilt headlight beams during the entire distance of approximately 270 feet from 26th Street to the point of accident. The crest of this gentle rise was a short distance (not measured or estimated in feet) ahead or north of the parked truck, but the grade turned down so gradually that there was (as the photographic exhibits demonstrate) no material limitation of sight distance for motorists. The speed limit on Indiana was 35 miles per hour.

Plaintiffs produced three witnesses who had driven past the parked truck on the night of accident. Witness Conrad, a musician "heading for work," was driving north on Indiana "just at dark * * * approximately 8 P.M." at a speed of about 30 miles per hour with the headlights on his 1963 Ford automobile on high beam when he first sighted the parked truck "I would say 50 feet" ahead and avoided it by turning to his left. Conrad emphasized that "I didn't hardly see the truck"—it was "very difficult to see"—"it was blended with the night; there wasn't any markings or anything"—"I almost hit the truck." He offered the explanation that he had been driving "over to the right [east] side of the road" as he approached the crest of the rise on Indiana because he had never seen a vehicle parked along that curb at night.

Witness Still, the proprietor of an office supply business who had known plaintiffs' decedent as a member of his (Still's) Sunday School class, was driving north on Indiana about 9:30 P.M. at a speed of 25 to 30 miles per hour when he first saw the parked truck "between five and six yards" ahead and, reacting on "a quick reflex," avoided the truck by turning "slightly" to his left. Before he turned, Still "wasn't too close to the [right] curb" anyway—"six to eight feet" from it.

Witness Awalt, a coproprietor with her husband in the operation of a retail paint business who had driven south past the parked truck earlier in the day and thus knew of its location, returned northbound on Indiana about 8:30 P.M. This witness did not profess to have narrowly escaped a collision with the truck, but she said that "you had to be pretty close to it to see it * * * I wouldn't say just how close be-

cause I don't exactly know." None of these passers-by saw any lights, reflectors, warnings or flares on or about the parked truck.

Plaintiffs' decedent was an honor student and engaged in several extracurricular activities at Joplin High School where he would have been a member of the Senior Class the ensuing school year. He was an industrious youth and, during the Summer of 1965, worked as a counterman at a Mc-Donald's hamburger stand. After going off duty at 10 P. M. on the night of accident, he stopped at a nearby drug store where his mother was employed, told her that he would pick up a half-gallon of ice cream to take home, and purchased at the drug store two legal tablets to deliver to Tom Berman, a handicapped schoolmate with whom he was associated in debating activities. He purchased the ice cream at Anderson's between 10:15 and 10:20 P.M. and, at the time of his fatal accident, apparently was on the mission of delivering the legal tablets since the place of collision was on the route to the Berman home.

The 1959 Renault driven by plaintiffs' decedent was "a used car" which had been purchased only two or three weeks prior to the accident. Plaintiff Winston E. Walker, the father in whose name title was taken, had inspected and checked the automobile carefully at that time. He testified that the headlights functioned properly, there was nothing "loose or wrong" with the steering mechanism, all of the tires were "reasonably good," and the mechanical brakes "worked all right" so that, "if you pressed down on the brakes hard * * * it [the Renault] would stop." There was no inquiry as to whether or not an emergency application of the brakes would skid the tires.

As noted at the outset, there was no known eyewitness to this tragedy. However, the grim photographic exhibits establish that the northbound Renault driven by plaintiffs'

decedent ran squarely under and into the protruding rear end of the flat bed on defendant's parked truck with both left wheels of the Renault in line with (i.e., approximately the same distance from the east curb as) the outside left rear dual wheel on the truck. Since the Renault was (so investigating officer Roberts of the Joplin Police Department estimated) only about four and one-half feet in width, the right side of the wrecked Renault was "roughly three feet from the [east] curb" although the outside right rear dual tire on the truck was only four inches from that curb. The Renault left no tire or skid marks on the pavement. The irrefutable physical evidence afforded by the extensive damage to the entire front end of the Renault justifies and commands characterization of the impact as severe rather than mild. However, any pronouncement as to the *degree* of severity or as to the speed at which the Renault was traveling at the moment of impact would reflect nothing more than unbridled guesswork and sheer speculation, particularly so by reason of the salient fact that the Renault was a light "compact" whose front end ran under the protruding rear end of the flat bed on the truck.

We have not overlooked defendant's contention that what appear to be some tire prints behind the *right* rear dual wheels on the truck, as shown in one photographic exhibit, established that the truck had been moved forward "ten inches to one foot" by the impact. Conceding *arguendo* that this might have been a permissible inference to be drawn by the finders of the facts, certainly we cannot say that these tire prints in a single photograph compelled such inference, particularly so since investigating officer Roberts said that he did not notice those marks—"I couldn't see them," there was no oral testimony concerning them, and other photographs show no tire prints behind the *left* rear dual wheels, the side on which the major force was delivered by the Renault.

As a result of the collision, plaintiffs' decedent sustained a skull fracture, severe brain concussion, compound fracture of the nose and throat, and multiple lacerations about the head, all apparently due in large part to a blow "in the right eye and right forehead" when the end of the truck bed crashed through the windshield of the Renault. He was unconscious when found and never regained consciousness before death came eight days later.

■ *Did plaintiffs make a submissible case of actionable negligence?* Plaintiffs' uncontroverted evidence was to the effect that there were no lights, reflectors, warnings or flares on or about the parked truck. Numerous cases have declared that it is negligence per se to permit a motor vehicle to remain at rest without lights on a highway, during the period when lights are required by Section 304.270(9).[1] However, instant defendant contends that the statutes "concerning the placing of lights on parked vehicles concern themselves with vehicles which are parked either in the traveled portion of the roads or on a highway or shoulder adjacent thereto" and that "this requirement does not extend to cars or vehicles which are lawfully parked along the curb in a normal parking place."

In our investigation of statutory requirements, we must bear in mind the definition of "*highway*" in Section 301.010: "*As used in* chapter 301 and *sections* 304.010 to 304.- 040 and *304.120 to 304.570*, RSMo, the following terms mean: * * * (6) '*Highway,' any public thoroughfare for vehicles, including* state roads, county roads and *public streets, avenues, boulevards, parkways or alleys in any municipality*". (All emphasis herein is ours.)

Section 304.310 provides: "*No person shall* drive, move, *park* or be in custody of any vehicle or combination of vehicles *on any street or highway* during the times when lighted lamps are required[2] unless such vehicle or combination of vehicles displays lighted lamps and illuminating devices as this chapter required. * * *" On August 3, 1965, the date of the accident under consideration, Section 304.380 required: "Every motor vehicle * * * shall be equipped with at least one rear lamp, not less than fifteen inches or more than forty eight inches above the ground upon which the vehicle stands, which when lighted will exhibit a red light plainly visible from a distance of five hundred feet to the rear * * *."[3]

The only exception to the plain requirement imposed by the aforesaid statutes is that found in the first paragraph of Section 304.450, as amended Laws 1961, p. 497: "1. Whenever a vehicle is lawfully parked upon a street or highway during the hours between a half hour after sunset and a half hour before sunrise and in the event there is sufficient light to reveal any person or object within a distance of five hundred feet upon such street or highway no lights need be displayed upon such parked vehi-

1. Wiber v. Mana, Mo., 356 S.W.2d 88, 92 (4); Cotton v. Ship-By-Truck Co., 337 Mo. 270, 85 S.W.2d 80, 85(10); Leek v. Dillard, Mo.App., 304 S.W.2d 60, 64(6); Ensminger v. Stout, Mo.App., 287 S.W. 2d 400, 405(3); Nickels v. Borgmeyer, Mo.App., 258 S.W.2d 267, 276(2); Roux v. Silver King Oil & Gas Co., Mo.App., 244 S.W.2d 411, 414; Casto v. Railway Express Co., Mo.App., 219 S.W.2d 276, 281(7); Taylor v. Silver King Oil & Gas Co., Mo.App., 203 S.W.2d 147, 154 (6); Smith v. Producers Cold Storage Co., Mo.App., 128 S.W.2d 299, 303(2); Ridenour v. Oklahoma Contracting Co., Mo.App., 45 S.W.2d 108, 110–111(1).

2. " 'When lighted lamps are required' means at any time from a half-hour after sunset to a half-hour before sunrise and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of five hundred feet ahead." Section 304.270(9).

3. This statute, as amended, now requires "at least *two* rear lamps" so mounted and exhibiting such red light plainly visible from the same distance to the rear. Laws 1965, p. 494.

cle." [4] In the instant case, defendant makes no contention, and there was no evidence, that at the time of collision there was sufficient light to have revealed the parked truck for a distance of five hundred feet.

In support of his hereinbefore-quoted contention that the cited statutes are applicable only to vehicles parked "in the traveled portion of the roads or on a highway or shoulder adjacent thereto" and not to those "lawfully parked along the curb in a normal parking place," instant defendant cites two cases. In the first, McLarney v. Cary, Mo.App., 98 S.W.2d 144 (1936), plaintiff sought $41.85 for property damage sustained when he ran into defendant's unlighted truck in a parking zone in the center of Main Street in the City of Brookfield. "[N]umerous electric lights were shining in the vicinity of the accident." 98 S.W. 2d at 145. In the opinion of the Kansas City Court of Appeals, per Shain, P. J., affirming the judgment nisi for defendant, we find the naked ipse dixit, born without the parentage of prior judicial authority, never recognized by judicial citation or discussion, and never legitimatized by judicial adoption in any reported Missouri case, that "[a]s to being parked without light in a parking zone, we conclude that the statute as to stopping on the public highway [Section 7778, RSMo 1929] does not apply." 98 S.W.2d at 146 (4). Subsequent radical changes in said Section 7778 [originally Laws of 1921, 1st Ex. Sess., § 22, p. 95], the tedious and involved text of which covered more than two full pages in the decennial revision of 1929, render the quoted ipse dixit in McLarney, supra, meaningless in the present state of the statutory law in

this area anyway. However, it may not be amiss to observe in passing that said Section 7778 dealing with "Lights" was, by its terms, applicable to any motor vehicle, "while on the *highway*, whether in operation or at rest," and that Section 7759, RSMo 1929, in the same article then provided that "[w]herever in this article * * * the following words or terms are used, they shall be deemed and taken to have the meanings ascribed to them as follows: * * * *'Highway.' Any public thoroughfare for vehicles, including* state roads, county roads and *public streets, avenues, boulevards, parkways or alleys in any municipality*." Furthermore since, as our Supreme Court stated in Teters v. Kansas City Public Service Co., Mo., 300 S.W.2d 511, 516, the judgment for defendant in McLarney, supra, was affirmed "because plaintiff was guilty of contributory negligence as a matter of law", then the naked ipse dixit concerning the applicability of the then statute on "Lights" (Section 7778) was mere dictum even as the preceding holding [98 S.W.2d at 146 (3)] thus paraphrased in Teters, supra, 300 S.W.2d at 516, to wit, "that a motor vehicle while parked is not being operated and the operator need only exercise ordinary care," was there declared to have been dictum. In short, we regard McLarney, supra, as neither controlling nor persuasive here.

In the other of defendant's cases, Lemken v. Brooks Truck Lines, Inc., Mo., 322 S.W.2d 803 (of which more anon), where plaintiff had a nighttime collision with the rear end of an unlighted trailer parked on a street in Kansas City, the judgment nisi for defendant was affirmed

4. Prior to amendment [Laws 1961, p. 497], Section 304.450 consisted of a single unnumbered paragraph which included the following exception: "* * * provided, that local authorities in cities, towns and villages may provide by ordinance that no lights need be displayed upon any such vehicle [parked or stopped upon a highway or shoulder adjacent thereto] when stopped or parked in ac-

cordance with local parking regulations upon a highway where there is sufficient light to reveal any person or object within a distance of five hundred feet upon such highway." See the discussion pertaining to Sections 304.310, 304.380 and 304.450 in Wiber v. Mana, supra note 1, 356 S.W.2d at 90–91, dealing with a vehicular collision occurring on November 4, 1959.

on the ground that plaintiff had been guilty of contributory negligence as a matter of law. In distinguishing certain Missouri cases in which the issue as to contributory negligence had been for the jury, the Lemken opinion noted, inter alia, that those cases "involved collisions with stationary vehicles which were blocking the travel portions of highways outside the limits of a city or town, places where the plaintiffs had no reason to anticipate the presence of stationary trucks" whereas "[i]n the instant case the unlighted trailer was parked at the curb of a city street, where vehicles normally park and are expected to be." 322 S.W.2d at 807. The quoted observations simply referred to a fact well-known to the ordinary motorist, namely, that regardless of statutory lighting requirements unlighted motor vehicles frequently are parked on city streets— one fact *among many* to be considered in determining whether a motorist has been contributorily negligent as a matter of law in colliding with an unlighted parked vehicle, but wholly irrelevant in determining what statutory duties are imposed upon the operator of the parked vehicle and whether a submissible case of primary negligence has been made against such operator. In Lemken, supra, the court did not discuss or rule any issue as to the primary negligence of the operator of the unlighted parked trailer, and we find the significant comment that "[t]*he lack of lights on the parked trailer may have been evidence of defendants' negligence* but it does not, in the reviewed circumstances of this case, explain or excuse the failure of plaintiff to have seen the unlighted trailer unit in time to have avoided it." 322 S.W.2d at 806.

It is our conviction that the lighting requirements imposed by Sections 304.310 and 304.380 (subject to the exception stated in the first paragraph of Section 304.450) are applicable to a vehicle parked at the curb on a city street, as was instant defendant's truck, and

that we have no right to extirpate by judicial fiat those obligations enjoined by the unambiguous and unequivocal language of the cited statutes. This, we believe, is in harmony with, and is supported by, the discussion concerning those statutes in Wiber v. Mana, Mo., 356 S.W.2d 88, 90–91. See also Casto v. Railway Express Co., Mo.App., 219 S.W.2d 276, where plaintiffs' northbound cab *on Morley Street* (over which Highway 63 was routed) *within the city limits of Moberly* ran into the rear end of defendant's truck "parked at the right-hand side of the highway, facing north"—"standing on the east side of the highway in somewhat of an angular position with the rear wheels some distance from the curb," when under "the prevailing conditions [as shown by witnesses whose testimony was somewhat similar to that of instant plaintiffs' witnesses] it was quite difficult to see the truck until very near to it." 219 S.W.2d at 278.

We recognize that, as instant defendant points out, negligence to be *actionable* must be a proximate cause of injury [Graham v. Conner, Mo.App., 412 S.W.2d 193, 201–202(7), and cases there cited], and that defendant's failure to satisfy statutory lighting requirements would not have been a proximate cause of the collision under consideration if, in the exercise of the highest degree of care, plaintiffs' decedent could and should have seen the parked truck in time thereafter to have taken effective precautionary or evasive action. Rowe v. Henwood, Mo. App., 207 S.W.2d 829, 833(2). However, we need not prolong this opinion by a discussion of proximate cause, for defendant's argument on this subject is commingled and merged with his argument that plaintiffs' decedent was guilty of contributory negligence as a matter of law, of which we will treat more fully in disposing of that point. Those interested in proximate cause may consult Leek v. Dillard, Mo.App., 304 S.W.2d 60, 65–66

(10–12), and Phillips v. Stockman, Mo. App., 351 S.W.2d 464, 473–474(12–14). Suffice it to say here that, as in plaintiffs' cited case of Davis v. Howell, 324 Mo. 1227, 1231–1232, 27 S.W.2d 13, 15, and in our case of Leek v. Dillard, supra, 304 S.W.2d at 66 (13), we are of the opinion here that whether defendant's failure to comply with statutory lighting requirements was a proximate cause of the collision involving plaintiffs' decedent was for the jury. See also Taylor v. Silver King Oil & Gas Co., Mo.App., 203 S.W.2d 147, 154(1–5). So holding, we conclude that instant plaintiffs made a submissible case of actionable negligence.

*Was plaintiffs' decedent guilty of contributory negligence as a matter of law?* Defendant's argument runs along this line: Before reaching the point of impact, plaintiffs' decedent had traveled up a gentle, uninterrupted incline for more than 270 feet with "an unobstructed view" ahead. He was charged with the continuous and inescapable duty to maintain a vigilant lookout ahead and laterally ahead [Stradford v. Bluefeather, Mo., 384 S.W.2d 541, 543(3); Thaller v. Skinner & Kennedy Co., Mo., 315 S.W.2d 124, 129 (4)]; and, to satisfy and discharge that duty, he was required to look in such observant manner as to enable him to see what one in the exercise of the highest degree of care for the safety of himself and others could and should have seen under similar circumstances. Braun v. Hoffmeister, Mo., 366 S.W.2d 406, 408(3); Immekus v. Quigg, Mo.App., 406 S.W.2d 298, 301(4). When the Renault was purchased some two or three weeks prior to the accident, the headlights were functioning properly; and, there being no evidence to the contrary, it should be assumed (as indeed we do) that the headlights on the Renault were not below legal requirements, i.e., that on low beam they would have revealed persons and vehicles at a distance of not less than 100 feet ahead. Section 304.350; Brown v. Wooderson,

Mo., 362 S.W.2d 525, 529(2), 99 A.L.R.2d 894; Cox v. Moore, Mo.App., 394 S.W.2d 65, 69(6); Allinson v. Missouri-Kansas-Texas R. Co., Mo.App. 347 S.W.2d 902, 906. With the brakes on the Renault "all right" and nothing wrong with its steering mechanism, plaintiffs' decedent had "more than sufficient room" to have avoided any collision by swerving to his left if he had been "traveling within the speed limit" of 35 miles per hour and had maintained a proper lookout ahead. Yet, the Renault ran squarely into the rear end of the parked truck and left no tire or skid marks on the pavement. Ergo, plaintiffs' decedent was guilty of contributory negligence as a matter of law.

To support the trial court's acceptance of this argument, defendant relies principally upon Lemken v. Brooks Truck Lines, Inc., supra, characterized in his brief as presenting "an almost identical set of facts." But, although the facts of that case and of the one at bar are similar in many respects, there are significant dissimilarities. Plaintiff Lemken ran into the rear end of a *large enclosed trailer 8 feet wide and 12 feet 3 3/4 inches high.* 322 S.W.2d at 804. Instant plaintiffs' decedent ran under and into the rear end of a *flat bed, which protruded 4 feet 4 1/2 inches beyond the rear wheels of the truck.* In reviewing the facts in the Lemken case, the court noted that a photograph showed "the rear of the trailer to be dirty and dusty with some lighter spots on its surface" but that "[t]here was no evidence as to what effect the dirt and dust on the trailer's rear had with respect to its visibility under the circumstances and conditions of the * * * case and we are unable to arrive at any conclusion in that respect favorable to plaintiff from the picture alone." 322 S.W. 2d at 805. Plaintiff Lemken argued that one of the "unusual conditions" responsible for the collision was "the dirt on the rear of the trailer which also covered * * * the reflectors." Answering, the court stated that "[t]he picture may show that

the right reflector was dirty but, as noted heretofore, *there was no evidence that the dirt and dust on the trailer's rear caused the trailer as such to blend with the night or to be obscure or invisible in the beam of headlights.*" Furthermore, "[t]here was no evidence * * * that the asphalt surface [of the street], its color, or the presence or color of the mud and dirt thereon had any effect upon the failure of plaintiff to have seen the trailer in ample time to have avoided colliding with it." 322 S.W.2d at 806–807. In the case at bar, there was evidence that the asphalt roadway was "gray," that the "bed [of the truck] was covered with dirt" and was "about the same color" as the asphalt, and that the sod on the front end of the bed was rolled with the dirt on the outside, so that it too was about the same color. Three of plaintiffs' witnesses testified in substance and effect that the parked truck was quite difficult to see, and one of those witnesses, mayhap as a mere coincidence, specifically stated that *the parked truck "was blended with the night."* In this connection, see Taylor v. Silver King Oil & Gas Co., supra, 203 S.W.2d at 149, affirming a judgment for plaintiff, where there was evidence that "on account of road dust or dirt on the [allegedly unlighted] truck it blended in color with the pavement"; Haley v. Edwards, Mo., 276 S.W.2d 153, 159, affirming a judgment for plaintiff, where, as emphasized in Lemken, supra [322 S.W.2d at 807], there was testimony that the "dirty gray" color of the unlighted parked truck made it difficult to see; and Beaver v. Wilhelm, Mo.App., 321 S.W.2d 1, 2, affirming a judgment for plaintiff, where the unlighted parked truck "was light gray or tan in color, was splattered with plaster, and very dirty."

■ Since plaintiffs' decedent ran squarely under and into the rear end of the parked truck and there was no indication that he had turned to his left as would have been the instinctive reaction of one cognizant of impending disaster [cf. Foster v. Sacco, Mo.App., 343 S.W.2d 171, 176], it is reasonable to believe that he did not see the truck in time to have turned. However, that does not, in and of itself, compel the conclusion that he was contributorily negligent as a matter of law. Although we assume that the headlights on the Renault were not below legal requirements in that generally under prevailing conditions they would have revealed persons and vehicles at a distance of not less than 100 feet ahead [Section 304.350], our concern here must be as to the distance at which plaintiffs' decedent, in the exercise of the highest degree of care, could and should have seen defendant's parked truck under the circumstances then and there existing. Smith v. Producers Cold Storage Co., Mo.App., 128 S.W.2d 299, 303(3); Casto v. Railway Express Co., supra, 219 S.W.2d at 281. The duty to maintain a vigilant lookout charged him with having seen "what looking would have revealed." [5] And he would not necessarily have been guilty of contributory negligence as a matter of law solely by reason of the fact (if so) that, as he approached the parked truck, he was driving at such speed that he could not have stopped within the distance the headlights on the Renault would have revealed the truck under then-existing circumstances. Haley v. Edwards, supra, 276 S.W.2d at 158(1); Parsons v. Noel, Mo., 271 S.W.2d 543, 547(5); Johnson v. Lee Way Motor Freight, Inc., Mo., 261 S.W.2d 95, 98(2).

■ Nor must it inevitably follow, as defendant suggests in his argument, that, since the Renault ran squarely under and into the rear of the parked truck and left no tire marks on the asphalt, plaintiffs' decedent "apparently did not see the truck * * * until the moment of impact, if he saw it at that time." For, if he was driving

5. Smith v. Kansas City Public Service Co., 328 Mo. 979, 991, 43 S.W.2d 548, 553(7); Frandeka v. St. Louis Public Service Co., Mo., 234 S.W.2d 540, 546 (5); Combellick v. Rooks, Mo. (banc), 401 S.W.2d 460, 463; Hinrichs v. Young, Mo., 403 S.W.2d 642, 645(2).

at the maximum lawful speed of 35 miles per hour (and we have no reason or right to assume that he was driving faster, Snider v. King, Mo.App., 344 S.W.2d 265, 277), he would have been moving 51.33 feet per second; and, during the reaction time of three-fourths second assumed in the absence of evidence on this subject [Roach v. Lacho, Mo., 402 S.W.2d 344, 350(10); Koogler v. Mound City Cab Co., Mo., 349 S.W.2d 233, 237(6)], he would have traveled 38.5 feet. In a number of instances, surviving plaintiffs who admittedly did not see a parked vehicle even that far ahead have been held *not* contributorily negligent as a matter of law.[6]

■ Opposing counsel have much to say concerning the presumption that a decedent was not guilty of negligence where there was no eyewitness or direct evidence of conduct indicating negligence. Lyon v. Southard, Mo., 323 S.W.2d 785, 788(4); Meier v. Moreland, Mo., 406 S.W.2d 97, 100(2); Keeney v. Callow, Mo., 349 S.W.2d 75, 80(8, 9). Of course there is, as instant defendant underscores, no room for the presumption in situations where, as in defendant's case of Justice v. Malin, Mo., 336 S.W.2d 77, 81(3), plaintiff's evidence, standing alone and unexplained, convicted decedent of negligence as a matter of law (in that instance of driving on the wrong side of the road), or where, as in defendant's cases of Stack v. General Baking Co., 283 Mo. 396, 223 S.W. 89, Burge v. Wabash R. Co., 244 Mo. 76, 148 S.W. 925, and Tetwiler v. St. Louis, I. M. & S. Ry. Co., 242 Mo. 178, 184, 194, 145 S.W. 780, 781,

784, there were eyewitnesses or direct evidence of decedent's conduct, or where, as in defendant's case of Carlson v. Atchison, T. & S. F. Ry. Co., Mo., 187 S.W. 842, 844, the physical facts conclusively established defendant's contributory negligence as a matter of law. But nothing in the record brings the case at bar within any of those exceptions.

■ Furthermore, instant plaintiffs adduced evidence that their decedent obtained his driver's license the day after his sixteenth birthday; that, during the period of about fifteen months from that date to the time of his tragedy, he had not been involved "in any accident or traffic violation"; and that "he was a very careful driver." There is authority for the proposition that, in the absence of eyewitnesses to an accident, proof of the ordinarily careful habits of the decedent is permitted as tending to prove his freedom from contributory negligence, provided that such evidence be not too remote as to time, place and circumstances. Gerhard v. Terminal R. Ass'n. of St. Louis, Mo. (banc), 299 S.W. 2d 866, 872(12); Elliott v. Elgin, J. & E. Ry. Co., 325 Ill.App. 161, 59 N.E.2d 486, 492–493(9); 25A C.J.S. Death § 84, pp. 833–834. We find it unnecessary to express any opinion as to the legal validity of that proposition, for the evidence concerning the habits and record of instant plaintiffs' decedent was received without objection or motion to strike and, therefore, its probative worth and effect were for the jury. Fellows v. Farmer, Mo.App., 379 S.W.2d 842, 846(2), and cases there collected in note 3.

6. Haley v. Edwards, Mo., 276 S.W.2d 153, 158, 159 (pltf., traveling 40 mph, first saw truck when 25'–30' from it); Beaver v. Wilhelm, Mo.App., 321 S.W.2d 1, 2, 3 (pltf., traveling 25–30 mph, never saw truck prior to collision); Casto v. Railway Express Co., supra note 1, 219 S.W.2d at 278 (pltf's. driver, traveling 20–25 mph, as "a guess" saw truck when 2' from it and collision occurred "just momentarily"); Smith v. Producers Cold Storage Co., supra note 1, 128 S.W.2d at 301 (pltf's. driver saw truck when he was "right upon" it—15'–25' distant); McGrory v. Thurnau, Mo.App., 84 S.W. 2d 147, 148, 149 (pltf., traveling 15 mph, saw automobile when 6' from it). See also Johnson v. Lee Way Motor Freight, Inc., Mo., 261 S.W.2d 95, 97 (pltf., traveling 40 mph, saw truck 30'–35' distant as pltf. emerged from patch of fog).

In the final analysis, the issue as to whether plaintiffs' decedent was contributorily negligent as a matter of law must be determined on the particular facts and circumstances reflected by the transcript before us [Moore v. Eden, Mo., 405 S.W.2d 910, 916(7); Johnson v. Lee Way Motor Freight, Inc., supra, 261 S.W.2d at 98; Harding v. Peterson, Mo.App., 227 S.W.2d 88, 90(1)]; and that issue was for the jury unless, upon the evidence and all favorable inferences deducible therefrom when viewed in the light most beneficial to plaintiffs, reasonable minds could not fairly differ as to decedent's negligence. Thompson v. Byers Transp. Co., 362 Mo. 42, 239 S.W. 2d 498, 500 (3, 4); Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14, 19(1); Pender v. Foeste, Mo., 329 S.W.2d 656, 659 (3); Jones v. Fritz, Mo.App., 353 S.W.2d 393, 399(11). Being unable so to say " 'beyond peradventure of reasonable controversy that the record conclusively convicts' " decedent of negligence [Parsons v. Noel, supra, 271 S.W.2d at 547; Mayne v. May Stern Furniture Co., Mo.App., 21 S.W. 2d 211, 213(5)], it follows that the action of the learned trial judge in submitting the issue of contributory negligence to the jury in the first instance was proper and that his subsequent action in sustaining defendant's motion for new trial on the ground that "plaintiffs' decedent was guilty of contributory negligence as a matter of law" cannot stand.

Accordingly, it is the judgment of this court (a) that the order of the Circuit Court of Jasper County entered on July 8, 1966, sustaining defendant's motion for new trial be set aside and for naught held, and (b) that the cause be remanded to said circuit court with directions to reinstate and re-enter as of April 5, 1966, the judgment for plaintiffs in the sum of $12,500 originally entered on that date upon the jury verdict then returned.

HOGAN and TITUS, JJ., concur.